Texas Southern Railway Company v. Mrs. Julia C. Harle.

No. 1749. Decided December 11, 1907.

1.—Railway—Sale—Incorporation by Purchaser—Conveyance—Married Woman.

The property and franchises of an insolvent railway company were placed in the hands of a receiver and by him sold under article 4549, Revised Statutes; the nominal purchaser bought for a married woman who paid for it with her separate means; and at her instance a new company was incorporated under the powers given by article 4549, 4550, Revised Statutes, for the purpose of acquiring the property and rights so sold and held. This suit involved the title to the property, which was claimed by the purchasing married woman, as against the new company, on the ground that her interest, so acquired, being one in real estate, could only be conveyed by her deed and separate acknowledgment, her husband joining, and did not pass to it through conveyance made by the nominal purchaser. Held, that, by the terms of the statute, the new corporation, by its creation, acquired title to the property, irrespective of any conveyance to it and by virtue of the fact that the purchaser had created the corporation to take and hold such property. (Pp. 178–185.)

2.—Same.

The purchaser of the property and franchises under article 4549, Revised Statutes, becomes the beneficial owner, his position analogous to that of a holder of the stock of the original corporation, discharged of its previous debts, but remaining charged with its duties to the public; the reincorporation by such owner and his associates is all that the statute requires to evidence the investiture of the new company with title to the property of the old; and it acquires this as its successor, and not purchaser, the statute contemplating no other purchase or conveyance than is effected by the organization of the new company, in which the owners are entitled, as stockholders, to interests corresponding to their preexisting interests. (Pp. 181–185.)

3.—Same.

The power of a married woman to become the purchaser of corporate rights at such sale can only exist if she is held to take them with the powers and duties which are inseparable from them, to be owned, used and passed from one to another in accordance with the laws that regulate them. (Pp. 185–187.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Harrison County.

The Railway Company sued Mrs. Harle and her husband to remove a cloud on the title to a portion of its road occasioned by her claim thereto. Mrs. Harle, in reconvention, claimed title in herself, and recovered title to an undivided two-thirds interest. The company appealed and judgment was rendered thereon giving the entire property in controversy to Mrs. Harle. Appellant, the railway company, thereupon obtained a writ of error.

*S. P. Jones,* for plaintiff in error.—Where all of the property, rights, franchises of a railway corporation are placed in the hands of a receiver and sold under order of the court in an equitable proceeding, to wind up the affairs of the corporation on account of its insolvency, the purchaser acquires the rights, privileges and burdens of the corporation by becoming the owner of the corporation, and the status of the property is in no way changed, and though the purchaser be a married woman, and purchase the property with her separate estate, she acquires no absolute fee in the corpus of the property, but only such qualified property or interest therein as is held by the owner of the capital stock of the railway corporation. The pleadings show that Mrs. Harle is not entitled to a judgment for the corpus of the property or any interest therein, but that she occupies the position of an ousted stockholder, and her remedy, if any, is a proceeding to establish her rights as an ousted stockholder or for the value of her stock thus controlled. Rev. Stats., arts. 4549, 4550; Sayles Civil Statutes, art. 4583e; Gulf, C. & S. F. Ry. Co. v. Crawford & Morris, 67 Texas, 692; Central & M. Ry. Co. v. Morris & Crawford, 68 Texas, 49; Acres v. Moyne, 59 Texas, 623; Houston & T. C. Ry. Co. v. Shirley, 54 Texas, 138; Williams v. Texas Midland Ry., 55 S. W. Rep., 130; 4 Thompson on Corporations, secs. 5352-5370.

These proceedings placed the title to the several pieces of property in the railroad corporation and the purchasers at equity sale thereby became the owners of the stock in the corporation, and if the stock has been wrongfully taken from their possession their remedy is for a conversion of the stock or an establishment of their rights as ousted stockholders. Same authorities.

The special verdict of the jury, taken as a whole, shows that if Mrs. Julia C. Harle acquired the property sold at equity sale in October, 1892, as her separate estate, that it was all of the property, charter-rights, franchises and privileges of the railway corporation, and that she caused the property to be operated as a railway corporation, holding it out to the public as a corporation, defended suits in its name as a corporation, and that she procured the organization and charter of the Texas Southern Railway for the purpose of holding and owning the property sold out at said equity sale, and that the Texas Southern Railway did take charge of and operate the property, and she procured shares of stock to be issued as representing her interest in the property and accepted the shares of stock as her interest in the property and transferred one-third of the stock to Scott & Jones and endorsed two-thirds of it and allowed it to be deposited with E. Key as security for a debt, and all of the proceedings had the

effect of placing the title to the corpus of the property in the Texas Southern Railway Company, and the court should have rendered judgment on such special findings in favor of the appellants, for all of the property, rights, etc., embraced in this suit. Same authorities.

The court erred in embracing in the judgment of the court, or filing in the case any conclusions of law and facts, and in finding that the evidence established certain facts, because the evidence was submitted to the jury on special issues, and the jury returned a verdict and the court had no power or authority to reach conclusions or findings different from the special findings of the jury, and the judgment must be supported by the special findings, or the same should be set aside and a new trial granted. Rev. Stats., arts. 1331, 1332, 1333; Waller v. Liles, 70 S. W. Rep., 17.

The Court of Civil Appeals has fallen into an erroneous construction of articles 4549 and 4550 of Revised Statutes in holding that where a new corporation is organized that the purchaser must convey to the new corporation; reason, justice, common sense and the settled status of railroad corporations will not admit of such interpretation of the statute, but if there could be a case where a transfer would be necessary, the case at bar is certainly not a case of that kind. Acres v. Moyne, 59 Texas, 623; Williams v. Texas Midland Ry., 55 S. W. Rep., 130; Gulf, C. & S. F. Ry. Co. v. Morris, 67 Texas, 692.

The court had no power to file conclusions of law that conflict with or disregard the verdict of the jury, especially in a case where no request for findings of law and fact were made. Houston v. Kapner, 95 S. W. Rep., 1103.

*Lightfoot, Long & Wortham, C. E. Carter,* and *T. P. Young,* for defendants in error.—A married woman can not be estopped from claiming and recovering her separate estate on the ground of fraudulent representations unless she has been guilty of some act of fraud respecting the title of the property. Harle v. Texas So. Ry. Co., 86 S. W. Rep., 1048.

Key is not shown to have ever had any other title than that conveyed by the Parrott quitclaim deed, which was only a security for debt. Key could therefore take no title under the mortgage, notwithstanding it was in the form of an absolute deed, for it is a rule of property in Texas, that a mortgage or conveyance in trust is but an incident to the debt, and does not vest the legal title in the trustee or mortgagee either before or after default in payment. Texas Loan Agency v. Gray, 34 S. W. Rep., 650 (Civ. App.); Blackwell v. Barnett, 52 Texas, 326.

The deed from Key to the Texas Southern Railway company conveyed only his "right, title and interest" to the road and making no mention of the mortgage, conveyed neither title nor mortgage. To have conveyed the mortgage by this deed it should have recited such facts therein and the recital of "right, title or interest" was not effectual for such purpose. McCamant v. Roberts, 27 S. W. Rep., 86 (Sup. Ct.); Perkins v. Sterne, 23 Texas, 563; Miller v. Boone, 23 S. W. Rep., 574 (Sup. Ct.).

Key having no title to the road at the time of the execution of his deed to the Texas Southern Railway Company or thereafter, except a mere mortgage in the form of a quitclaim deed, could not pass by his deed to the Texas Southern Railway Company any greater right or title than he so had, and his deed to the Texas Southern Railway Company conveyed no title to it, and consequently the deed from Parrott to Key being a mortgage (although in the form of an absolute deed) could not form a proper link in the chain of title for the Texas Southern Railway Company. Wiggins v. Wiggins, 40 S. W. Rep., 643 (Ct. App.); Duty v. Graham, 12 Texas, 427; Hannay v. Thompson, 14 Texas, 142; Mann v. Falcon, 25 Texas, 271; Morrow v. Morgan, 48 Texas, 304; Loving v. Milliken, 59 Texas, 423.

"A quitclaim deed made by a mortgagee to his mortgagor or to the purchaser of the equity of redemption operates as a discharge of the mortgage." Ely v. Stannard, 44 Conn., 528; Wade v. Howard, 6 Pick. (Mass.), 492; Jerome v. Seymour, Harr. (Mich.), 357.

If it should be conceded merely for the sake of argument that the deed from Key to the Texas Southern Railway Company did in fact convey his mortgage or that the Texas Southern Railway Company by reason of such obligation therein undertaken to pay the same off, was subrogated to the right of Key, then it would follow that the Texas Southern Railway Company would have just such rights as Key had under his mortgage, but no more. Now Key being a mere mortgagee could not maintain a suit of trespass to try title on the strength of his mortgage, without a foreclosure first had. Wiggins v. Wiggins, 40 S. W. Rep., 643; Pratt v. Goodwin, 61 Texas, 333; Mann v. Falcon, 25 Texas, 271.

The mortgage from Parrott to Key although in form an absolute deed was never redelivered to Key, after he had parted from its possession, to take effect as a deed, and even if it had been redelivered for such a purpose it would have been ineffectual to pass the title as being a deed, even if the debt was cancelled by the agreement of the parties, under the doctrine that "once a mortgage always a mortgage" and a new written instrument must be made to pass the title. Keller v. Kirby, 9 Texas Court Rep., 439; Brinkman v. Jones, 44 Wis., 498; Howe v. Carpenter, 6 N. W. Rep., 357.

The property described in the deed from Starr to Parrott became the separate property of Mrs. Hale notwithstanding a portion of the funds may have been borrowed, for it was shown that the road which was her separate property was charged with the debt and its payment secured by the mortgage (quitclaim deed) made by Parrott (the trustee) to Key. Sinshiemer v. Kahn, 24 S. W. Rep., 533; Ullman v. Jasper, 70 Texas, 452; Shuster v. Bauman Jewelry Co., 79 Texas, 180; O'Connor v. Vineyard, 44 S. W. Rep., 485; Carter v. Bolin, 30 S. W. Rep., 1085; Morrison & Hart Ex. v. Clark, 55 Texas, 437; Higgins v. Johnson, 20 Texas, 395; Peters v. Clements, 46 Texas, 125; Smith v. Oldham, 26 Texas, 533; Dunham v. Chatham, 21 Texas, 231; Baker v. Baker, 55 Texas, 581.

The property being placed in George W. Parrott in trust for

Mrs. Harle's separate estate, and such trust being known to E. Key and the Texas Southern Railway Company, the taking of the title by the said Key and the Texas Southern, would in the eyes of the law, be a holding by them of such title as was held by Parrott, that is to say, as trustees for Mrs. Harle, and being such trustees for Mrs. Harle they could not maintain this action of trespass to try title. Black v. Caviness, 21 S. W. Rep., 635; Clark v. Haney, 62 Texas, 511; DeEverett v. Texas M. Ry. Co., 67 Texas, 430; Hudson v. Wilkinson, 45 Texas, 444; McKamy v. Thorp, 61 Texas, 652-3; Bailey v. Harris, 19 Texas, 109; Overstreet v. Manning, 67 Texas, 660; Perry on Trusts, sec. 217, 241; Beach on Trusts and Trustees, sec. 533 and authorities.

Holding under a quitclaim deed by the Texas Southern Railway Company can not make it an innocent purchaser of the road for value and the findings, of the jury on good faith could not affect the question, as a quitclaim deed will not support the plea of innocent purchaser. Huff v. Crawford, 89 Texas, 220; Daugherty v. Yates, 35 S. W. Rep., 939; Richardson v. Levi, 67 Texas, 361; Tram Lumber Co. v. Hancock, 70 Texas, 314; Parrish v. Jackson, 7 S. W. Rep., 486; Culmell v. Borroum, 13 Texas Civ. App., 462; Harrison v. Boring, 44 Texas, 256; Taylor v. Harrison, 47 Texas, 460; Laughlin v. Tipps, 8 Texas Civ. App., 649.

To enable the plaintiff to maintain its suit to remove cloud from title it was necessary for it to show that it had the paramount legal title. Chinn v. Taylor, 64 Texas, 385; Dean v. Wills, 21 Texas, 642; Herrington v. Williams, 31 Texas, 448; Keys v. Mason, 44 Texas, 140; O'Neal v. Manning, 48 Texas, 403; Orton v. Smith, 18 How., 263.

Mrs. Harle was a married woman, and could not divest herself of her separate property, except in such manner as is required and authorized by law. "In the matter of recovering her lands conveyed in a manner not binding on her and where the purchaser knows or must be held to know the vice of her conveyance, she is entitled to an unconditional recovery. For such a transaction can not be ratified by accepting the purchase money, nor an estoppel created against her. To so say would be to emasculate the statute requiring her conveyance to be in a particular form and in a particular manner." Berry v. Donley, 26 Texas, 738; Fitzgerald v. Turner, 43 Texas, 79; McLaren v. Jones, 89 Texas, 131; Steed v. Petty, 65 Texas, 490; Cauble v. Worsham, 70 S. W. Rep., 739; Moores v. Linney, 2 Texas Civ. App., 295; Owens v. New York & T. Land Co., 11 Texas Civ. App., 288; DeGarcia v. Lozano, 54 S. W. Rep., 280; Speer on Married Women, sec. 72.

It is not contended that Mrs. Harle ever executed any written instrument conveying the title to the road to either E. Key, the Texas Southern Railway Company, or Scott & Jones. Her acts not amounting to fraud, do not estop her. Harle v. Texas Southern Ry. Co., 86 S. W. Rep., 1048; Cauble v. Worsham, 70 S. W. Rep., 739; Speer Married Women, sec. 131.

At the foreclosure sale Mrs. Harle, who was purchaser with her

separate funds, acquired the "title" to the road as constructed. Harle v. Texas Southern Ry. Co., 86 S. W. Rep., 1049; Thayer v. Wathem, 44 S. W. Rep., 906; Koontz v. Northern Bank, 16 Wall., U. S., 196; Russell v. Texas & Pacific Ry. Co., 68 Texas, 646, 5 S. W. Rep., 686; Acres v. Moore, 59 Texas, 625; 20 American & Eng. Enc. Law, 1st ed., 129, 149; Gluck v. Becker on Receivers of Corporations, sec. 40; High on Receivers, sec. 447; Watkins v. Minnesota Thresher Mfg. Co., 41 Minn., 150; Atchison v. Davidson, 2 Pin. Wis., 48; Manning v. Evans, 19 Hun, N. Y., 500; Moak v. Coats, 33 Barb. N. Y., 498; Porter v. Williams, 5 How. Pr. N. Y., 441, 59 Amer. Dec., 519; People v. Hulburt, 5 How. Pr. N. Y., 446; Wing v. Disse, 15 Hun, N. Y., 190; Chautauqua Bank v. Risley, 19 N. Y., 369; Perry Trusts, sec. 759; Walsh v. Barton, 24 Ohio St., 28; Seymour v. Canandaigua & Niagara Falls Co., 25 Barb., 284; Shamokin Valley Railroad Co. v. Livermore, 47 Pa. St., 465.

A railroad may be owned and operated by a private person and Mrs. Julia C. Harle was capable of owning and holding the railroad and equipment, which was bought under the court sale. 18 Amer. & Eng. Enc. Law, 1st ed., 783; Pierce on Railroads, 2d ed., 2; Bank of Middlebury v. Edgerton, 30 Vt., 182; Henderson v. Ogden City Ry. Co., 26 Pac. Rep., 286; 46 Amer. & Eng. R. R. Cases, 95; Dand v. Kingscote, 6 M. & W., 174; Farrow v. Vansittart, 1 Eng. R. & C., 602; Stewart's Appeal, 56 Pa. St., 413; Wilson v. Cunningham, 3 Cal., 241; South Pac. Ry. Co. v. Orton, 32 Fed. Rep., 457; Hall v. Brown, 54 N. H., 495.

The deed from Key to the Texas Southern Railway Company was merely preliminary steps taken by Mrs. Harle to the issue of bond, and that such bond issue having failed, the failure of such consideration could be shown by parol evidence and the Texas Southern Railway Company was not entitled under such facts to recover the property. Cummings v. Moore, 65 S. W. Rep., 1113; Gibson v. Fifer, 21 Texas, 260; Taylor v. Merrill, 64 Texas, 494; Johnson v. Elmen, 59 S. W. Rep., 253; Womack v. Wamble, 27 S. W. Rep., 154.

That the roadbed and track and depot houses are real property as contradistinguished from personal property seems to be well settled and Mrs. Harle buying such at the sale under order of court, bought "real property" and not personal property. Texas & Pacific Ry. Co. v. Gay, 86 Texas, 571; Texas, etc., Ry. Co. v. McMillen, 1 Texas Civ. App., sec. 163; 23 Amer. & Eng. Enc. Law, 2d ed., 725, and authorities; 2 Elliot on Railroads, sec. 389, and authorities.

[In support of a motion for rehearing, which was overruled.]

The rolling stock and all other movable property of railroad companies or corporations in this State are personalty (Constitution, article 10, section 4. Statutes, article 4543), while their roadbed, track, right of way, buildings and improvements are realty, as is also their franchise. (Rorer on Railroads, vol. 1, sec. 13, p. 412.) And all are subject to sale under execution (Constitution, art. 10, sec. 4. Statutes, art. 4543), power in deed of trust or order of court foreclosing lien. (Article 4549. R. Co. v. Shirley, 54 Texas, at 138.

Ry. Co. v. Newell, 73 Texas, at 338. Ry. Co. v. Morris, 67 Texas, at 700.)

Railroads may be owned and operated by private individuals or associations of individuals unincorporated (Constitution, article 10. Rorer on Railroads, vol. 1, sec. 2, p. 8), and such individuals or associations of individuals may become purchasers of railroad properties, rights and franchises at sales under execution, power in deeds of trust or order of court foreclosing lien (Statutes, art. 4549). But, without special Legislative Enactment, no railroad corporation in this State can purchase the property, rights and franchises of another railroad company, association or incorporation.

A sale of its property as above, does not, however, destroy the corporate existence of the sold out company. Its directors are trustees for its creditors and stockholders with right to sue and power to be sued the same as though the sold out corporation were possessed of its properties (Articles 4554, 4555, 4556). By virtue of their purchase of its real and personal property, the means by which it could perform its duties to the public and exercise its franchise, rights and powers, purchasers of the sold out corporation become invested with all the privileges and subject to all the duties following their ownership of such property. In the absence of statutory enactment they would of necessity exercise these privileges and perform such duties in their individual capacity separately or associated as an unincorporated company. Article 4549 was enacted to extend to such purchasers all the powers and privileges and to subject them to all the obligations and duties of a railroad corporation empowering them to organize under the name and style of the sold out corporation, possessed of all of its rights under the law and subject to all of its liabilities.

The rule allowing sales of this class of property under execution, deeds of trust and orders of sale does not, however, do away with the necessity of making proper conveyance under the Texas Statutes to the purchasers of that portion of the sold out property held to be real estate by our law; hence, deed duly acknowledged and recorded as muniment of title by the sheriff or commissioner making such sale. Neither did the Statute (Art. 4549) permitting such purchasers to organize as a corporation under the name and style of the sold out corporation change or destroy the rule requiring conveyances of realty to be evidenced by written deed duly signed and acknowledged or proven. The fact that the entire property, rolling stock, roadbed, right of way and franchise, is handled as an entirety no more obviates the necessity of compliance with this law of conveyance than does the case of a transfer of real and personal property as inseparable parts of the same transaction.

The facts do not show any organization by Mrs. Harle under the name and style of the sold out corporation nor any transfer or conveyance by her to such organization, but merely the continued operation of the road under the old name. No stock was issued, no bonds floated, no corporate meetings held. The road was run and operated by Harle solely and alone as and for the property of his wife. If her disability of coverture deprived her of the benefits of the provisions

of Article 4549, as the court intimates, we may, without conceding its correctness, answer that she did not seek to come within such provisions, but was content to own and operate the property in her individual capacity as she had the right to do.

In view of article 4549 allowing organization by the purchasers and operation of the road under the name, style and corporate rights of the sold out corporation, with power under article 4584e to issue stock and bonds, the Legislature, in the enactment of article 4550, must necessarily be held to have had in contemplation more and other than merely a new reorganization of the purchasers of the sold out corporation, something already accomplished by article 4549. The use of the words acquire and own show plainly the intent that there should be a purchase and acquisition and not merely the continuance of the property in the old corporation, but under a new name. It is no more unreasonable or unwarranted to construe this article as requiring a valid and legal transfer than to so construe article 4359.

Articles 4549 and 4550, construed in the light of the other articles of the Railroad Statutes and of the principles of law applicable to this class of property, can mean one thing and one only; that an individual purchaser of such a sold out corporation who does not wish to operate his property in his individual capacity may, under article 4549, either alone or with associates, organize and operate under the name and style of the sold out corporation, clothed with its powers and subject to its duties to the State and public, authorized to issue stock and to float bonds and to such extent in the shoes of the original incorporators; or, may under article 4550, reach the same results by a new incorporation for the purpose of acquiring the property. Neither plan does away with or changes the law of conveyance and in either event a lawful and regular deed of transfer to the realty must be made; in the one case to the organization under the name of the sold out corporation; in the other to the new corporation. This is in line with all other of our railroad statutes and consonant with the spirit of well established and universally recognized principles of law.

Mrs. Harle's coverture did not bar her from ownership of this class of property nor from its operation. The Statute (Art. 4549) in its application to her is in no wise different from its application to those not under disability of coverture. It, as likewise article 4550, did not change the law of real estate conveyance, and if Harle had been the purchaser instead of his wife, a deed from him duly executed and acknowledged or proven would have been requisite to a valid conveyance of the real property in the absence of facts constituting an estoppel.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This is a controversy between the plaintiff in error and Mrs. Harle joined by her husband, J. W. Harle, over the ownership of a portion of the line of railroad and its appurtenances which has been in the possession of and operated by the plaintiff in error from Marshall to

Winnsborough, Texas. The part in controversy is that extending from Marshall to Montvale Springs in Harrison County, a distance of about fifteen miles. The action was brought by plaintiff in error against the Harles and G. W. Parrott to remove the cloud upon its title caused by the claim of Mrs. Harle. The answer of the defendants, besides pleading the general issue, set up the claim of Mrs. Harle as it will appear in the further statement and prayed for judgment in Mrs. Harle's favor for the part of the road specified. By the judgment in the District Court, title to the property in controversy was adjudged to be in plaintiff and Mrs. Harle, jointly, one-third in the former and two-thirds in the latter. On appeal the whole was adjudged by the Court of Civil Appeals to Mrs. Harle.

The facts which we regard as controlling may be stated as follows: Prior to 1892 the road from Marshall to Montvale Springs belonged to the Paris, Marshall & Sabine Pass Railway Company, having been constructed and put in operation by that company or others to whose rights it had succeeded. This was all of the road which had been built and put in operation under a charter which authorized the construction of lines further north, east and south. In that year, the property of the Paris, Marshall & Sabine Pass Railway Company, having previously been put in the hands of a receiver by the District Court of Harrison County, a decree was entered foreclosing a mortgage upon and ordering a sale of all of such property in such terms as to include "the entire roadbed, track, franchise and chartered right" of the company. (Rev. Stat., art. 4549.) A sale was made accordingly, and afterwards confirmed by the court, at which the properties were bought in the name of George W. Parrott for $16,000 and a deed was executed to him from the master commissioner. The purchase was thus made and the deed was so executed at the instance of Harle for the use and benefit of Mrs. Harle, $12,000 of the purchase money being paid out of her separate funds and the remaining $4,000 being advanced by a bank at Marshall. To secure the bank for this advance the Harles caused Parrott to execute and deliver to E. Key, an officer of the bank, a quitclaim deed of the property purchased. Thereafter the railroad was operated under the name and by authority of the charter of the sold-out company for Mrs. Harle's benefit, her husband being general manager, until the organization of the plaintiff, The Texas Southern Railway Company, which was consummated in 1897. Its organization was brought about by Harle, acting for his wife with her full concurrence, and was in accordance with the statutes regulating the subject. The charter was filed March 12, 1897. It named, as incorporators, E. Key and eleven associates, and as first directors seven of this number. Neither Mr. nor Mrs. Harle was included in either list. But it appears that these persons were procured so to act by Harle and wife, who donated to each a share of stock to qualify him. The charter recites that E. Key and associates had, on the 4th day of October, 1892, purchased at receiver's sale, made in accordance with law and the orders of the District Court of Harrison County, the roadbed, track, franchise, and chartered rights of The Paris, Marshall & Sabine Pass Railway Company and that they were desirous of forming a corpora-

tion under the laws of Texas, stating its purpose to be the acquisition of the roadbed, track, franchise, rolling stock, chartered rights and all other property of said company, and its present constructed line, and the construction and completion of the road. It stated the capital stock to be 3,000 shares of $100 each, which had been subscribed, and that more than five percent thereof had been paid, "consisting of the purchase price of the aforesaid Paris, Marshall & Sabine Pass Railway, which purchase price is twenty-five thousand dollars ($25,000)." One hundred and fifty shares of the stock were issued. Mrs. Harle becoming the owner of all except that which she donated to the directors. Prior to this organization, suits for money had been prosecuted against the Paris, Marshall & Sabine Pass Railway Company on claims growing out of its operation after the foreclosure sale, and, in 1897, executions were levied on the property upon judgments recovered against it. The road was in bad condition, physical and financial, and, in order to prevent sales and a threatened receivership, the Harles settled with the claimants by assigning to S. T. Scott and S. P. Jones one-third of the stock issued by the new company. So far, it is undisputed that all that was done was with Mrs. Harle's full knowledge and assent, her husband acting for her with full authority. During the proceedings culminating in the organization of the present corporation and at a meeting of its board of directors, E. Key, at the instance of Harle, executed and delivered to the new company a deed to the property conveyed to him by Parrott, which was accepted by resolution of the board. The deeds were then returned to the possession of the Harles and were kept by them until they were produced as evidence in this cause. Afterwards the portion of the stock which Mrs. Harle had not assigned to others was, with her consent, deposited with Key, in lieu of the deed from Parrott, as security for the unpaid debt of $4,000 to the bank. Thereafter this stock was taken out of Key's hands by Harle and deposited with W. C. Pierce, another officer of the bank, for purposes a statement of which is deemed immaterial; and still later Pierce was authorized by Harle to deliver it to D. H. Scott as security for certain obligations or contracts which need not be more particularly stated, there being no question in the case as to the present ownership of the stock or as to any liability for its conversion. This stock was cancelled by authority of Scott, who was president of the railroad, and shares were issued to other parties in its stead. After the organization of the plaintiff corporation, Harle, in behalf of his wife, continued to be the general manager of the road, and controlled all of the business of the corporation in meetings of the stockholders and directors, and otherwise, until 1899, when he left the State and thereafter he and his wife had no further connection of any kind with it. The only things he caused to be done which are claimed to have been done without authority from his wife are the execution and delivery of the deed from Key to the plaintiff, the deposit of the stock with Pierce and its subsequent delivery to Scott.

As we do not regard these issues as essential to the judgment to be rendered, further statement is unnecessary. We remark, in passing however, that the jury, upon special issues, found in favor of the

plaintiff upon some of these disputed questions as to authority from Mrs. Harle, and the trial judge seems to have disregarded such findings and made contrary ones, presumably because he thought that the verdict on those points was unsupported by the evidence. We are not prepared to say that these findings of the jury were without any support from the facts of the case, nor that, even if they were, the trial judge had the authority to disregard them in rendering judgment, should they be regarded as essential. Waller v. Liles, 96 Texas, 21.

The trial court also found that the organization of the present corporation, the execution of the deed from Key to it, the issuance of stock, etc., were merely preliminary to the issuance and sale of bonds, and the conclusion seems to be suggested that, as the scheme failed of its purpose, the facts stated have no legal effect upon the title of Mrs. Harle to the road itself. It is also found as a fact that the present plaintiff through its corporate officers and those who acquired stock in it, had notice of Mrs. Harle's rights. The legal propositions which chiefly controlled the actions of the trial court and of the Court of Civil Appeals are that the equitable title to the railroad, as real property, was acquired by Mrs. Harle, in her separate right, by the purchase in the name of Parrott for her benefit; that the new corporation could only acquire such title by conveyance from her; and that it could only be conveyed by the joint deed of herself and husband privily acknowledged by her in accordance with the statute regulating conveyances of real property of married women. The correctness of these propositions must be tested by the provisions of the Revised Statutes authorizing the foreclosure sale and prescribing its legal effect and incidents. The leading provisions are as follows:

"Art. 4549. In case of the sale of the entire roadbed, track, franchise and chartered right of a railroad company, whether by virtue of an execution, order of sale, deed of trust or any other power, the purchaser or purchasers at such sale and their associates, shall be entitled to have and exercise all the powers, privileges and franchises granted to said company by its charter, or by virtue of the general laws; and the said purchaser or purchasers and their associates shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges and benefits thereof, in the same manner and to the same extent as if they were the original corporators of said company; and shall have power to construct, complete, equip and work the road upon the same terms and under the same conditions and restrictions as are imposed by their charter and the general laws."

"Art. 4550. In case of any such sale heretofore or hereafter made of the roadbed, track, franchise or chartered right of a railway company or any part thereof as mentioned in article 4549, the purchaser or purchasers thereof and their associates shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the portion of the road so purchased as if such road or portion of the road were the road intended to be constructed by the corporation, and when such charter had been filed the said new corporation shall have all the powers and

privileges conferred by the laws of this State upon chartered railroads, including the power to construct and extend; provided, that notwithstanding such incorporation the portion of the road so purchased shall be subject to the same liabilities, claims and demands in the hands of the new corporation as in the hands of the purchaser or purchasers of the sold out corporation; provided, that by such purchase and organization no rights shall be acquired under any former charter or law in conflict with the provisions of the present Constitution in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or removed."

Laying aside, for the present, the questions that arise out of the disabilities of the married woman, let us see what are the rights, privileges and duties of a purchaser under these provisions.

In the case of Gulf, C. & S. F. Ry. Co. v. Morris, 67 Texas, 700, Judge Stayton says, referring to article 4549, article 4550 not having been adopted at that time, that the sold out "corporation continues and the purchasers become in effect new stockholders, the corporate property so purchased, however, being relieved from liability for debts not creating a prior incumbrance on the property sold." Referring to the permission given by law for sales of such property in foreclosures or under execution, he further says: "These are the means through which the laws of this State authorize the sales of railroads." Of the same provision Judge Gaines said in Central & M. R. R. Co. v. Morris, 68 Texas, 59: "But a purchase of the property and franchises of a railroad company may take place under judicial process, or the power given in a deed of trust, which we have no doubt would work a transfer to the purchaser of its statutory and common law *obligations* to the public."

In the case of Gulf, C. & S. F. Ry. Co. v. Newell, 73 Texas, 338-9, which also arose prior to the adoption of article 4550, Chief Justice Stayton, considering the effect of an execution sale under article 4549, again said: "By the sale made by the sheriff there was a change made in the ownership of the Central & Montgomery Railroad, and of its franchises, but the corporate existence continues with the franchise neither enlarged nor restricted, as before. A railway company, *in whomsoever may be its ownership,* stands charged with every duty and obligation to the public imposed upon it by its charter and the nature of its business, and from these it can not escape without legislative permission so long as its corporate existence continues. . . . A person or corporation, however, who acquires the property and franchises of a railway corporation through sale under execution, takes it freed from all liability for its former indebtedness not secured by prior lien, and from all mere personal obligations assumed by the former owner."

The statutory provisions above quoted authorize the sale and purchase of things that would otherwise be inalienable, namely, the franchises derived from the charter to build, own and operate a railroad, and the property essential to the exercise of that franchise—to the performance of the duties to the public assumed by the acceptance of it. Article 4549, in defining the things that are subject to its provisions, does not specify disjunctively the franchise and char-

tered right, or the roadbed, or the track, but specifies the entire road-bed, track, franchise and chartered right as being that the sale of which shall lead to the consequences prescribed. It is not the purchaser of the roadbed, or of the track or of the franchise and chartered right, but it is the purchaser of all these things together who is "entitled to have and exercise all the powers, privileges and franchises granted to said company by its charter, or by virtue of the general laws." This, as may be deduced from the opinions referred to, was for the reason that a common ownership of the franchise and of at least so much of the property as is mentioned was deemed essential to the continued attainment of the purposes for which the franchise was granted; and for this reason permission was not given for a sale of the franchise apart from the other property named. Article 4554 carries out this idea, when it provides that "when the roadbed, track, franchise and chartered powers and privileges of said railroad company is levied upon . . . the entire roadbed, track, franchise and chartered powers and privileges of such company shall be levied upon and sold." If any modification in this is wrought by art. 4550, it is immaterial to this case.

It follows that when such a purchase is made, the purchaser holds that which he purchased as an entire thing (Central & M. R. R. Co. v. Henning, 52 Texas, 476); that he acquires the franchises only because he acquires the other property necessary to enable him to exercise the franchise; that he is permitted to acquire all and to possess the powers and privileges of the sold out company only because he assumes the obligations arising from the possession of such property and of such powers and privileges.

It is true that he becomes the owner of all, of the corporeal as well as of the incorporeal property; but he does not own one separated from the other. His right and duty is to exercise the franchise by using and operating the road as that franchise permits and requires, and not otherwise. He becomes entitled to the benefit of the returns from such operation, and in this he is in the position of the holder of the stock of a corporation; but, doubtless, he may, by virtue of his ownership, exert a more direct power and control over the management of the road and its business than stockholders usually may. He is declared to be the true owner of the charter and corporator under the same, and vested with all the powers, rights, privileges and benefits thereof in the same manner and to the same extent as if he were the original incorporators, and he is to exercise them under the same conditions and restrictions as are imposed by such charter and the general laws.

From the nature of such property and the powers and public duties incident to its ownership, it would seem to follow, necessarily, that every purchaser must be one legally capable, not only of owning the property, but of exercising the rights and powers and of assuming and performing the duties incident to his ownership. The rights and the duties being thus dependent on each other the purchaser must not only possess and exercise the former but must perform the latter.

By the very terms of the statute the right of the purchaser or pur-

chasers to have "associates" is fully recognized. That these associates may be others than those who made the purchase is made clear by the fact that the provisions in favor of the "purchaser or purchasers" would have been complete without the addition of the words and "their associates." It is evident therefore that in the rights acquired by a purchase under article 4549 the purchaser or purchasers may associate others with himself or themselves.

It is to such purchasers and their associates that article 4550 applies. It proceeds upon the premise that they are possessed of and charged with the rights, powers and duties which arise out of a purchase under the former article and confers upon them and their associates a right which had not previously resulted from such a purchase, that of forming a corporation with powers and privileges conferred by the laws of the State upon chartered railroads. Special laws had previously been passed in aid of purchasers of such property to enable them to act as new or different corporations in exercising the rights and powers given. Houston & T. C. Ry. Co. v. Shirley, 54 Texas, 125; Acres v. Moyne, 59 Texas, 623. Later a general law for the incorporation of railway companies was adopted, to be followed instead of the method of incorporation by special charters previously in vogue, and this Act of 1889, now article 4550, was passed to enable purchasers holding property under article 4549 to incorporate under those general provisions for the purpose of "acquiring, owning, maintaining and operating the road," that is, the road previously bought; and the statute declares: *"And when such charter has been filed* the said new corporation shall have all the powers and privileges conferred by the laws of this State upon chartered railroads, including the powers to construct and extend." It further provides that notwithstanding such incorporation, the portion of the road so purchased (referring to the purchase under the sale previously referred to) shall be subject to the same liabilities, claims and demands in the hands of the new corporation as in the hands of the purchaser or purchasers of the sold out corporation.

Now it is said that the new company does not become the owner of the property so held by its organizers without a purchase and conveyance from them. To this proposition we can not agree. The only reason for the incorporation, the only excuse for the existence of the new company, is the fact that those who bring it into existence already own a road and the franchise to operate it; and this ownership is made the basis of a new incorporation under the general law. But for this consideration, no reason would exist for special authority to form another corporation, since ample authority is given by other provisions which would enable the same persons to form a railway corporation. The very purpose, which must be declared in the new charter, is the acquisition, etc., by the new company of property already owned by those who are to form it, and this action on their part is all the statute requires to evidence the investiture of that company with the rights and its subjection to the duties previously appertaining to the corporators themselves under the old charter. If a conveyance of the property is essential, its owners may refuse to convey, or the corporation may refuse to accept. What, then,

would become of the powers and privileges which are expressly vested in the company "when such charter has been filed?" These powers are granted in consideration of the ownership of the old franchise and road and the acquisition thereof by the new company; and the new franchise, with its incidental powers and privileges, is plainly intended as a substitute for that hitherto belonging to the purchaser under the charter of the sold out company. If that purchaser still retains any of the property, franchise or road, he retains all of it, for, as we have seen, it is treated throughout as inseparable. If he retains it, it is still his right and duty to employ it, as before, not only for his own benefit but for that of the public; in other words, notwithstanding the creation by him of a new corporation with franchises, powers and privileges of its own, he remains precisely as before, owning the railroad with the franchise to operate it unimpaired. What, then, becomes of the corporation which he has created? It stands without the property, the acquisition and ownership of which was the only purpose of its creation and powerless to do anything, powerless because the only franchises and powers it could have under this statute would be those connected with the ownership of the road, including that to "construct and extend" it, and not that to purchase or construct another road. The new franchise is granted to authorize the ownership and operation of the same road the ownership and operation of which were authorized by the old franchise, and the new franchise, the property of the new company, necessarily takes the place of the old. The contention that the physical property essential to the exercise of either franchise still belongs, notwithstanding this change, to the purchaser under the foreclosure sale, involves the strange consequence that he would hold it without the power to operate it, while the new company would hold the exclusive power to operate it without the ownership and possession essential to the exercise of that power. If it be said that the new company might purchase the property, the answer is that the statute contemplates no further purchase than is effected by the organization of that company. The persons who owned the old franchise and road are the same that create the new company in consideration of such ownership, and they become entitled, as stockholders, to interests in its franchises and property corresponding with their preexisting interests.

The first proviso of article 4550 assumes all of this when it makes the property subject in the hands of the new company to the same claims, liabilities and demands as in the hands of the purchaser, "*notwithstanding such incorporation.*" If the property does not pass by incorporation, why make it subject in the hands of the corporation; and if it passes only upon purchase by such corporation, why make it so subject "*notwithstanding such incorporation,*" rather than notwithstanding such purchase? Why make it liable at all "notwithstanding the incorporation," but for the reason that thereby the corporation succeeds to this particular property of its organizers and should therefore be charged with their liabilities, etc., incident to their position as its owners.

Article 4551, also, speaks of the formation of such a corporation as a "reorganization." The same view of the effect of such incor-

poration was evidently taken by the Legislature when it adopted the statute which now constitutes chapter 14, title XCIV of the Revised Statutes. By article 4584e, not only purchasers of the kind mentioned in Article 4549, but "any company organized by their consent" is authorized to issue stock and bonds based upon the reasonable value of said railroad property. All that any of these provisions contemplate is that the corporation shall be organized for the purposes specified in article 4550 by the owners of the old franchises and of the roadbed and track. Such organization is the basis for treating the new company as the owner of the property and of the franchises to own and operate it, and for the grant of authority to issue stocks and bonds in amounts calculated upon the value of such property. The assumption of any such divided ownership and responsibility to the public as is involved in the contentions of the defendants in error is inconsistent with the scheme of these statutes.

Equally inconsistent is the suggestion that the organization of the new corporation was ineffectual to invest it with such ownership because the various steps taken to incorporate a new company were taken in the hope and expectation of raising money upon bonds to be issued and because that scheme failed of realization. When the owners of the property exercised the right given them and completely organized the new corporation it acquired a lawful existence, had rights and owed duties which were fixed by the law and were no longer subject to the will of the persons organizing it. It became responsible to the State for the performance of its duties and that it might perform them, it became invested with the franchise granted and with the property upon which such franchise was founded and which was made essential to its existence by the statute.

The contention based upon Mrs. Harle's disability as a married woman is largely answered by what we have already said. The statutes discussed makes no distinction between purchasers. It clothes all with the same rights and powers and subjects them to the same obligations. If it may be assumed that it was contemplated that a married woman might take fully as the purchaser of a railroad, as provided, it must also be assumed that she must do so to the full extent declared; that she may not only acquire the property rights, but that, if she does so, she takes them with the powers and duties which are inseparable from them. The Legislature, in these statutes, is not dealing with ordinary property which may pass from one to another in accordance with the rules of law regulating transactions entirely private, but with franchises, granted partly for the public benefit, and property essential to the exercise of those franchises and the securing of those benefits. The franchises and property must be acquired, owned, used and passed from one to another in accordance with the laws which regulate them. It would be subversive of the purposes of those laws to say that a married woman may acquire such property under them in her separate right, hold it as she holds her ordinary separate estate, and at the same time interpose her disability as an obstacle to the attainment of the purposes for which it must be owned and used by all who may own and use it. If she may become the purchaser as provided by article 4549 (and she cer-

tainly can not otherwise become one in the full sense) it necessarily follows that she may organize the corporation as provided in article 4550, with the same consequences that would flow from like action on the part of any other purchaser, since that article applies to all who purchase under the preceding one. These assumptions as to her capacity to become such a purchaser as is contemplated by the statute really involve very important questions. Others suggest themselves not less prominently. May the legal title acquired by a purchase like that made in Parrott's name, be encumbered by such a trust as that asserted in favor of Mrs. Harle, if the full discharge of his duties by the purchaser would be hampered by her coverture? Can such property be mortgaged in the way in which it is claimed it was mortgaged to Key? If both of these questions should be resolved negatively, should the deeds be held to pass the full title to Parrott and from him to Key, unaffected by the alleged trusts, and should Parrott and Key be regarded as the purchasers intended by the statute? The full concurrence of Mrs. Harle and all the other parties in the course taken with the property renders definite answers to these inquiries unnecessary. We may concede, for present purposes, that she acquired an equitable interest in the property and that it was not divested by the deed to Key. It was such an interest as she and her husband could adjust in the way in which they did adjust it, by organizing, with the concurrence of the other parties, the new company and taking its stock in lieu of her preexisting claims. The rights conferred by this stock were of precisely the same nature as the only ones which she could previously have had, if her disability operated in the transaction at all. If it should be held that she acquired the property as a purchaser in the full sense of article 4549, it would follow that article 4550 empowered her, as it does all such purchasers to cooperate in the creation of the new corporation, with all of the consequences attached by the statute to such action. On the other hand, to say that her disability limited her power to deal with the property as the statute says purchasers may deal with it, is to assert a proposition which goes much deeper into the very foundation of her rights. If she does not take under the statute, and fully so, how does she take? If her disability precludes her from exercising the powers and discharging the duties of purchaser in the way the statute contemplates, why does it not also preclude her from taking the property at all? The only answer we can give which will recognize both the impediment of her coverture and an equitable right or interest in the franchises and other property is one which will make that right or interest consistent with the purposes of the statute, by so defining it as to entitle her to the benefit of the returns from the management of the business of the railroad by one competent to stand in the position of purchaser and to assume its responsibilities. While, on the assumption of her disability which we are now making, she would be incompetent to take control and management of the railroad as purchaser within the meaning of the statute, the assumption of such a position by a legally competent person, at the same time acting as her trustee to the limited extent indicated might sufficiently subserve the policy of the law. Thus

treated, her right would be, as before stated, not a title to the franchise and physical property, obstructing the employment of them as the statute contemplates, but a right to the returns from their management. Such a right she and her husband would have full power, notwithstanding her coverture, to exchange for the stock of the corporation organized to take the position her trustee had before held. Ballard v. Carmichael, 83 Texas, 355. The admitted facts show that this exchange was freely and fully made and, in consequence, her right became that of a stockholder in the plaintiff corporation, the latter taking the property by virtue of its organization through the conjoint action of all who had any claim of right under the purchase at foreclosure sale. We prefer to treat the case thus because, in view of the rule of construction, that statutes of general application like those discussed are generally held to apply to persons *sui juris,* and not to those under disability, we are not prepared, as at present advised, to hold that the statutes regulating such sales of railway property and their consequences qualify married women to purchase and assume the responsibilities attached by law to a purchase. Conceding that Mrs. Harle may have acquired such a right as we have indicated under the purchase, it was lawfully converted into that of stockholder in the present corporation, and if any legal wrong has been done to her it was in depriving her of the stock, as to which no question is here involved.

The judgment of the District Court and the Court of Civil Appeals will be reversed and judgment will be rendered for the plaintiff as prayed for.

*Reversed and Rendered.*