### PULLMAN CO. v. CASTLEBERRY et al.
(No. 2737.)

(Court of Civil Appeals of Texas. Texarkana. April 25, 1923. Rehearing Denied May 10, 1923.)

1. Carriers ⚖➝416—On breach by sleeping car company of contract to permit occupying berth as bed, only damages caused by breach recoverable.

If sleeping car company breached its contract with invalid passenger to permit her to occupy berth as bed during a trip extending into the daytime, she was entitled to recover only such substantial damages as may reasonably be supposed to have been in the parties' contemplation, and for injuries occasioned by her own negligence, or from overtaxing her strength by taking the trip while too frail to endure it, no damages could be recovered.

2. Carriers ⚖➝416—In action for sleeping car company's breach of contract, special findings held so conflicting as to require new trial.

In invalid passenger's action against sleeping car company for breach of contract to allow her to occupy berth as bed during a trip extending into the daytime, special findings of the jury that such breach was the proximate cause of her injuries, that her own acts were the proximate or contributing cause, and that the overexertion of the long trip was the proximate cause of her injuries, *held* so conflicting as to require a new trial.

3. Trial ⚖➝358—Inconsistent findings held to require reversal.

Where the findings of the jury are utterly inconsistent with each other, a judgment cannot be rendered upon the verdict, and a new trial is required, for the findings as a whole would have to be set aside.

Error from District Court, Hunt County; Newman Phillips, Judge.

Action by Mrs. Ellen Castleberry and another against the Pullman Company. Judg-

ment for plaintiffs, and defendant brings error. Reversed and remanded.

Mrs. Ellen Castleberry had been a patient for more than six months at the State Tuberculosis Sanitorium at Carlsbad, and decided on November 21, 1921, to go to her home at Neyland, in Hunt county, Tex. She went to San Angelo to take a passenger train via Cleburne to Dallas, thence to her home. The train left San Angelo about 3 o'clock p. m., and was due to arrive at Cleburne about 6:20 a. m. Mrs. Castleberry purchased a railway ticket through to Neyland, and a sleeping car ticket calling for lower berth No. 10 from San Angelo to Cleburne. She brings this suit to recover damages, alleging in her petition:

"That at the time the plaintiff purchased or caused to be purchased a ticket entitling her to a berth in one of the Pullman sleepers, the defendant, acting through its agent, was informed of her condition, and that the purpose of purchasing the said ticket was to the end that she was to have the privilege of lying down in said sleeper during the entire trip to Dallas, Tex.; that after plaintiff boarded said train, and after taking her seat in the sleeper, she notified the conductor and other officers in charge of and operating said Pullman car that she was sick and unable to sit up, and demanded that the bed be made down to the end that she might lie down in said bed, and that officers and agents of said defendant failed and refused to make down said bed or to provide any means for the plaintiff to lie down in said sleeper, and that plaintiff was compelled to sit up from 3 o'clock in the afternoon on the day of May 18, 1921, until 7 o'clock p. m. of said date; that she was then required to sit up from about 5 o'clock a. m. of May 19, 1921, until her train reached Dallas about 9 o'clock a. m., causing her to suffer. most excruciating physical pains, mental anguish, and distress of mind, which continued during the entire trip, which lasted for more than 17 hours; and plaintiff was also caused to suffer a relapse of her condition, and will continue to so suffer in the future until relieved by death."

The defendant answered by general denial, and pleaded in a general way negligence of the plaintiff in failing to exercise ordinary prudence for her health and protection during the trip. The defendant further specially pleaded that the injuries for which the plaintiff sues "were directly caused" as well as "contributed to" by "the negligence of the plaintiff," viz.: (1) By the exertion consequent upon making the trip at the time and in the manner she did in her then condition of health and strength; (2) by the act of failing to properly prepare and arrange for the trip; and (3) by conduct of the plaintiff en route causing unnecessary and additional exertion and fatigue incident to railway travel at Dallas.

The case was submitted to the jury on

special issues, and on the answers made the court entered judgment for the plaintiff.

There is much evidence in the record and the same is conflicting. The evidence, though, is practically · without dispute as to the following facts: That Mrs. Castleberry had a sleeping car ticket calling for lower berth No. 10 from San Angelo to Cleburne; that she also had a seat ticket for the daytime in the sleeper, but not a ticket calling for a berth in daytime, from Cleburne to Dallas; that the bed in lower berth No. 10 was made down for Mrs. Castleberry and she began to occupy it from 6:30 p. m. of May 18, 1921, until about 5 o'clock a. m. of May 19, 1921. It appears that Mrs. Castleberry left her bed in the sleeper at about 5 o'clock a. m. to go to the ladies' toilet room, expecting to return and lie down on the bed, but the porter concluded that she had finally arisen to dress for the day, and made the bed up in order to afford a seating place for her. The train was due to arrive at Cleburne at about 6:20 a. m., but was about 20 minutes late. Plaintiff could have used the bed 30 or 40 minutes longer before reaching Cleburne.

The jury made findings in answer to special issues to the effect: (1) That plaintiff specially contracted with the agent of the defendant for a made-down berth in the Pullman car from the time the train left San Angelo continuously to Cleburne; (2) that the physical condition of the plaintiff, of which the agent was fully informed at the time, was such as to require her to be permitted to occupy a bed; (3) that immediately after becoming a passenger, and about 3 o'clock in the afternoon, plaintiff requested both the porter and the conductor in charge of the Pullman car to make down and permit her to occupy the berth as a bed, then apprising them of her special contract and of her illness and of the necessity for her to go to bed; that the said employees refused to make down the berth as a bed until about 6:30 p. m.; (4) that en route to Dallas after leaving Cleburne plaintiff again requested that the berth be made down as a bed, and that the said employees refused to do so; and (5) that the plaintiff did not have any special agreement or contract for through berth as a bed continuously and without change from San Angelo to Dallas.

(1) In answer to Q. 6 the jury found that the "failure" to "prepare the berth for the plaintiff at the time she requested it to be prepared" was the "proximate cause" "of the damages alleged and described in the plaintiff's petition."

(2) In answer to special Q. No. 19 the jury found that "the direct or proximate cause of plaintiff's injuries" was (1) "in failing or refusing to make down the berth before the time the same was made down" (i. e. from 3 o'clock p. m. to 6:30 p. m.), and (2) "in making up the berth before the time it was necessary for her to dress or prepare to alight from the car at Cleburne" (i. e. from 5:30 o'clock a. m. to 6:20 a. m.), and (3) "in failing or refusing to make down a berth in the daytime between Cleburne and Dallas" (i. e. between 6:35 o'clock a. m. and 9 a. m.).

Further, the jury answered "yes" to both of the following questions:

"Q. 7. Was the plaintiff guilty of negligence in all or any of the ways alleged by the defendant in its answer in making the trip from San Angelo to Neyland, Tex., at the time and in the state of health she was in when she made said trip?

"Q. 8. If you say yes to the foregoing question, then did such negligence on the part of the plaintiff proximately cause or contribute to cause the injuries complained of in her petition?"

Further, the jury found in response to special questions 21 and 25 that the "trip from the sanitorium to Neyland, in view of her then state of health and strength and the then existing progress of her disease," occasioned such overexertion and taxing of plaintiff's strength as to "proximately cause or contribute to her injuries and suffering."

In Q. No. 8½ the court submitted the measure of damages and conditioned a finding of any sum of damages in favor of the plaintiff upon the special finding by the jury as follows:

"That she suffered damages proximately resulting from such failure to occupy said berth, and that you find in answer to Q. No. 7 that the plaintiff was not guilty of contributory negligence proximately causing or contributing to her injury."

The jury made the answer awarding "$2,500" damages.

Etheridge, McCormick & Bromberg and Thaddeus, Bell & McCormick, all of Dallas, for plaintiff in error.

Evans & McCoy, of Greenville, and L. Dillard Estes, of Commerce, for defendants in error.

LEVY, J. (after stating the facts as above). [1-3] The jury made the finding that the agent of the Pullman Company specially contracted with Mrs. Castleberry to permit her to use and occupy berth No. 10 as a bed, beginning at San Angelo and continuing to the arrival of the train at Cleburne. In such special contract Mrs. Castleberry was entitled to recover such substantial damages as may reasonably be supposed to have been in ·the contemplation of the parties at the time they made the contract, as the probable result of its breach. But if the injuries sued for were, as pleaded by the Pullman Company, occasioned entirely by the plaintiff's own negligence occurring en route on the train or before reaching Neyland rather than

by the breach of the contract relied on for recovery; or if the injuries resulted solely, as pleaded by the Pullman Company, from the overexertion or overtaxing of plaintiff's strength consequent upon making the trip and undertaking railway travel in her then state of health and physical strength for such a long time and distance—then there can be recovered only nominal, and not the substantial damages allowed by the jury. It is a firmly established rule of law which limits the recovery for the breach of a contract to those damages which are the proximate and natural result of the breach, and which denied a recovery for those consequences which are not the natural consequences of a breach of the contract. Hence, on complaint thereof and as the record appears, the principal question is that of whether or not the different findings of the jury respecting the sole cause of the injuries sued for are so conflicting as to require a new trial. The jury first finds that the breach of the agreement to make down the bed in daytime en route from San Angelo to Cleburne was "the proximate cause" and "the direct or proximate cause," viz., "of plaintiff's injuries" and "of the damages alleged and described in the plaintiff's petition." The jury then finds that Mrs. Castleberry's own acts "in the ways alleged by the defendant in its answer" were "the proximate" or "contributing cause," viz., "of the injuries complained of in her petition." Further the jury found, as reasonably intended, that the overexertion of the long trip and railway travel owing to the plaintiff's state of health and strength and the progress of her disease was "the proximate cause," viz., "of her injuries and suffering." It is evident that this special verdict so conflicts with itself as to leave to uncertainty for judicial consideration the "proximate cause" or the real sole producing cause of "the injuries sued for." In this state of the verdict the court, under the statute, could only set the verdict aside and grant a new trial. It is the settled rule in this state that where the findings of the jury are utterly inconsistent with each other a judgment cannot be rendered upon the verdict, and a new trial is required. Waller v. Liles, 96 Tex. 21, 70 S. W. 17; Earnest v. Lake (Tex. Civ. App.) 101 S. W. 480. The findings as a whole would have to be set aside. Arkansas Fertilizer Co. v. City National Bank (Tex. Civ. App.) 137 S. W. 1179; Ry. Co. v. Harle, 101 Tex. 180, 105 S. W. 1107.

The defendant in error urges that under the special charges submitted to the jury it is apparent, in the light of the record as a whole, that the jury found that Mrs. Castleberry was caused to suffer damages in the amount assessed as resulting from the breach of the contract. The contention can-

not be sustained, since the jury's affirmative findings respecting "proximate cause," meaning the sole cause, of the injuries sustained and sued for, are so conflicting and inconsistent. Further, the suggestion in the argument of the defendant in error respecting some of the defenses pleaded to this suit probably should have been considered and followed had special demurrer or exceptions been made to them in the trial court.

The judgment is reversed, and the cause remanded for another trial.