ABE WILLIAMS v. TEXAS MIDLAND RAILROAD.

Decided December 23, 1899.

**Railway Company—Sale of Road—Liability for Removing Depot.**

Where a railway company laid out a town along its line and advertised and sold lots in accordance with a plat showing a railroad reservation for depot and telegraph offices, and plaintiff bought some of the lots and improved them, and afterwards the railroad was sold at foreclosure sale and the purchasers removed the station, depot, and offices away from the town, they were not liable to plaintiff for the injury to his property caused by such removal, in the absence of an express assumption by them of such a liability of the sold-out company. Revised Statutes, articles 4549, 4550, construed.

APPEAL from Hunt.   Tried below before Hon. HOWARD TEMPLETON.

*J. S. Woods* and *W. P. McBride,* for appellant.

*L. C. Alexander,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought on October 1, 1896, in the District Court of Hunt County, by appellant, Williams, against appellee, Texas Midland Railroad, to recover damages claimed to have been sustained by reason of appellee's removal of its passenger and telegraph stations and depot from the town of Roberts, in said county.  The petition, in substance, alleges that the appellee is duly incorporated under the general laws of Texas as a railroad corporation; "that it succeeded to all the rights, privileges, and franchises, and became liable to all the duties, conferred upon and assumed by the Texas Central Railway Company, as shown by its original and amended charter and otherwise, which said original and amended charters are annexed hereto, and marked Exhibit A, and made a part hereof."   This exhibit recites that: "Whereas, Charles Moran, Cornelius B. Gold, and Henry K. McHarg, committee of first mortgage bondholders of the Texas Central Railway Company, have purchased at foreclosure sale that portion of the roadbed, track, franchise, and chartered rights of said company located between Garrett and Roberts, in the counties of Ellis, Kaufman, and Hunt, State of Texas; and whereas, the said Charles Moran, Cornelius B. Gold, and Henry McHarg desire to avail themselves of the rights and privileges of the general laws of the State of Texas, and especially of 'An act to amend chapter 11, title 84, of the Revised Civil Statutes of Texas, so as to add thereto another article to be known as article 4260a,' approved March 29, 1889, and have associated with themselves the other subscribers, for the purpose of forming a corporation under the laws of the State of Texas, to acquire, own, maintain, and operate the railroad so purchased aforesaid (including the power to construct and extend):  Now, to this end the said Charles Moran, Cornelius B. Gold, and Henry K. McHarg, and their associates, sign the following articles of incorporation.'   Then follows a formal charter, drawn in accordance with the statute in such cases provided, but in no part of it does it provide that the corporation assumes any contract obligations or liabilities of the Texas Central Railroad Company.   It is further alleged that in September, 1882, the Texas Central Railroad Company, being the owner of a certain 106-acre tract of land in Hunt County, laid it off into lots and blocks, streets and alleys, and public ways, and caused a map thereof to be made, and upon which was represented a railroad reservation upon which said company would build its main line of railroad, and locate its railroad and telegraph stations and depot; that by deed it duly dedicated said streets, alleys, and ways to public use, and named the town Roberts; that it advertised and held a public sale of said lots, and sold great numbers of them, at prices far in excess of their

intrinsic value, and that by reason of the conduct of said Texas Central Railroad Company, as alleged, it made and entered into an implied contract, with all the purchasers of said lots who at any time purchased the same, to permanently and forever maintain said stations and depot in said town, and induced all purchasers of lots, including the plaintiff, to rely and act upon said contract, whereby they acquired and became seized of vested rights in the permanent maintenance of said stations and depot in said town; that plaintiff had bought four of said lots and one acre adjoining said town, near the stations and depot, and had been induced to do so by the acts and conduct of said Texas Central Railroad Company; that he had placed permanent and valuable improvements on same of the value of $1500; that in 1892 the defendant, the Texas Midland Railroad, knowing all these facts, and of the contractual relations between plaintiff and the Texas Central Railroad Company, bought the railroad, etc., and succeeded to all the rights and liabilities of the Texas Central Railroad Company, as before stated; that it operated and maintained the road, and the stations and depot, as located and built by the Texas Central, until October 18, 1894, when it forcibly, and against plaintiff's protest, removed the stations and depot away from said town to another place in Hunt County; that before said removal his said property was worth $2500, but by reason of removal it had decreased in value until it was not worth $500; that the removal was willful and malicious, and for the purpose of injuring and destroying the value of his property, etc.; and praying for $2000 actual, and $15,000 vindictive, damages. The appellee filed a general demurrer, and several special exceptions to this pleading, all of which were sustained, and the appellant refusing to amend, his suit was dismissed, and from the order of dismissal this appeal is prosecuted, and the only question here is whether his petition shows a cause of action against the Texas Midland Railroad.

It may be that, with a little verbal sharpening up, he stated a good cause of action against the Texas Central Railroad Company, as we distinguish this case from Railway v. Colburn, 90 Texas, 233. Perhaps, as against that company, it comes within the rule laid down in Railway v. Molloy, 64 Texas, 614. These views, however, pertain only to the lots in the town so platted and sold by the company, and not to the acre lot, which lay outside of said town, and was not alleged to have been sold by the company. As to this acre lot, we are clear that no right of action exists whatever against either company, for the reasons laid down in the Colburn case, supra. But as to whether the appellee company is liable to any individual must depend upon the general laws of the State; for the petition, read with the exhibits referred to, does not allege any contract made by it promising or assuming to perform the contracts, either express or implied, of the sold-out company, and whether it is sufficient, as against appellee, depends upon articles 4549 and 4550 of our Revised Statutes, which are as follows:

"Art. 4549. In case of the sale of the entire roadbed, track, franchise

and chartered right of a railroad company, whether by virtue of an execution, order of sale, deed of trust or any other power, the purchaser or purchasers at such sale and their associates, shall be entitled to have and exercise all the powers, privileges and franchises granted to said company by its charter, or by virtue of the general laws; and the said purchaser or purchasers and their associates shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges and benefits thereof, in the same manner and to the same extent as if they were the original corporators of said company; and shall have power to construct, complete, equip and work the road upon the same terms and under the same conditions and restrictions as are imposed by their charter and the general laws.

"Art. 4550.  In case of any such sale heretofore or hereafter made of the roadbed, track, franchise or chartered right of a railway company or any part thereof as mentioned in article 4549, the purchaser or purchasers thereof and their associates shall be entitled to form a corporation under chapter one of. this title, for the purpose of acquiring, owning, maintaining and operating the portion of the road so purchased as if such road or portion of the road were the road intended to be constructed by the corporation, and when such charter. has been filed the said new corporation shall have all the powers and privileges conferred by the laws of this State upon chartered railroads, including the power to construct and extend; provided, that notwithstanding such incorporation the portion of the road so purchased shall be subject to the same liabilities, claims and demands in the hands of the new corporation as in the hands of the purchaser or purchasers of the sold-out corporation; provided, that by such purchase and organization no rights shall be acquired under any former charter or law in conflict with the provisions of the present Constitution in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or removed."

The first article copied conferred upon the appellee "all the powers, privileges and franchises granted to the Texas Central Railroad Company by its charter, or by virtue of the general laws."  In fact, under said article, the stockholders of the appellee must, in law, be considered the owners of the Texas Central's charter, and the original corporators thereunder, and "vested with all the powers, rights, privileges and benefits thereof, in the same manner and to the same extent as if they were the original corporators of said company."  Nowhere in this article, however, are they made chargeable with, or liable for, the contractual obligations of the sold-out company, whether express or implied.  The second article copied in express terms defines and fixes the rights of the purchasing company, and also for what obligations the property in its hands shall be liable; that is, it "shall have all the powers and privileges conferred by the laws of this State upon chartered railroads, including the power to construct and extend; provided, that notwithstanding

such incorporation the portion of the road so purchased shall be subject to the same liabilities, claims and demands in the hands of the new corporation as in the hands of the purchasers of the sold-out corporation." It will be observed that only "the portion of the road so purchased remains subject to the liabilities, claims and demands" which existed against it in the hands of the sold-out company. This provision does not declare that the new company shall be liable for anything, but only that it takes the property subject to certain liabilities, claims, and demands. In Railway v. Shirley, 54 Texas, 125, our Supreme Court held that the purchasers of a railroad do not, by reason thereof, become responsible for its debts; and in Railway v. Newell, 73 Texas, 334, it was held that only such liabilities, claims, and demands as have been secured by prior liens on the property, etc., can be enforced against the same in the hands of the purchaser at execution sale. See, also, Railway v. Lyons (Texas Civ. App.), 34 S. W. Rep., 363; Eddy v. Hinnant, 82 Texas, 356. The sale in this case passed the title to the property clear of debts, liabilities, and claims as effectually as if it had been made under decree of the court or under execution. We are therefore of opinion that the court did not err in sustaining the general demurrer to the petition, and dismissing it, because it stated no cause of action against the Texas Midland Railroad, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.