## STATE v. SUGARLAND RY. CO.

(Court of Civil Appeals of Texas. Austin. Jan. 28, 1914. Rehearing Denied Feb. 25, 1914.)

1. RAILROADS (§ 57*) — ABANDONMENT OF TRACT—POWER.

In view of Rev. Civ. St. 1911, art. 6550, providing that no railroad shall change its route after the same has been designated by survey, and article 6625, providing that the main track shall not be abandoned or removed after having been constructed and operated, in absence of express legislative grant a railroad company cannot abandon or remove any part of its track after operation has begun.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. § 57.*]

2. MANDAMUS (§ 133*)—COMPELLING OPERATION—REMEDY.

Mandamus or mandatory injunction is a proper remedy to prevent a railroad company from abandoning a part of its road after completion.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 268; Dec. Dig. § 133.*]

3. RAILROADS (§ 57*)—REMOVAL OF TRACK—CONSENT OF RAILROAD COMMISSION—AUTHORITY.

The Railroad Commission had no power to permit a railroad company to abandon and remove a part of its track which is being operated; such authority not being given to the Commission by statute, which is the source of all of its power.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. § 57.*]

4. RAILROADS (§ 254*)—REMOVAL OF TRACK—PENALTIES.

Even if the Railroad Commission had authority to make an order directing a railroad company to replace track removed pursuant to another order of the Commission, a penalty will not be assessed against the company for failure to comply with the order to replace the track, upon requiring it to do so by writ of mandamus, since it had reasonable grounds to believe it was justified in doing so.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 764–772; Dec. Dig. § 254.*]

Appeal from District Court, Travis County; Charles A. Wilcox, Judge.

Suit by the State of Texas against the Sugarland Railway Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded, with instructions.

B. T. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State. Lane, Wolters & Storey, of Houston, for appellee.

### Statement of the Case.

RICE, J. The Sugarland Railway Company was chartered in 1893 to run from Sugarland refinery to Arcola in Ft. Bend county, where it formed a junction with the Gulf, Colorado & Santa Fé and the International & Great Northern Railways, and, in accordance with said charter, had built and for many years operated its line between said points. Thereafter, during 1911, desiring to abandon and remove about 3½ miles of its track north from Arcola Junction, it applied to the Railroad Commission of Texas for this privilege, and obtained permission to do so; but the Railroad Commission, with-

out notice to the company, rescinded its order. In the interim, however, the company had taken up and removed said part of its track, which the Commission then ordered it to replace, and, upon its refusal to do so, this suit was brought by the state to compel said company to restore its track, and operate its railway thereon, as well as to recover a penalty for noncompliance with said order.

. The case was tried before the court without a jury, and, from an adverse judgment, the state prosecutes this appeal, assigning as error the refusal of the court to render judgment in its behalf. The company admitted removal of its track, as alleged, but sought to justify its action by pleading and showing that from Burnside Switch to Arcola Junction, from which point the same had been removed, the road had become in bad order, its ties had rotted, and its rails rusted, and there was practically no need for its operation because of the fact that it did not pay operating expenses so far as its local traffic was concerned; that it ran through a low, flat, undeveloped country, and that prior to its abandonment the company had procured a charter, and was now operating a branch road, extending from a point about 3 miles north of Arcola in a southerly direction, which branch connected with both the International & Great Northern and the Santa Fé Railways, and gave substantially the same service, so far as its connections were concerned, as the old line from Burnside Switch to Arcola Junction; that it ran through a fertile, developed, and productive country, furnishing railway facilities to about 1,000 people, whereas, the abandoned line served only one person, who was not left without railroad connections, because of the fact that he was adjacent to the line of the Gulf, Colorado & Santa Fé Railway; that prior to the abandonment of said track it had obtained an order from the Railroad Commission, permitting its removal, which had been effected before said order had been rescinded; that to comply with the last order would involve an outlay of $40,000, as well as $10,000 annually to maintain said line; that the local revenues derived from the operation of the abandoned line amounted to about $34 per annum. There was no allegation nor proof, however, showing the revenues arising from the traffic over its connecting lines via Arcola.

### Opinion.

Before a railway company can be chartered in this state, the persons proposing to form such company shall adopt and sign articles of incorporation, which, among other things, shall contain a statement of the places from and to which it is intended to construct the proposed railroad, and the intermediate counties through which it shall extend, stating

the time of commencement and the period of the continuation of the proposed corporation (subds. 2 and 4, art. 6408, Rev. St. 1911), which, when so prepared, adopted, and signed by its stockholders, shall be submitted to the Attorney General for his approval, and, when obtained, shall be filed in the office of the Secretary of State. In the instant case, these requirements had been complied with, and the road had been actually built and for many years in operation between Arcola Junction and Sugarland, the termini named in its charter, when abandoned.

[1] We have been unable to find any provision of law, and our attention has been directed to none, expressly authorizing a railway company in this state, under any circumstances, to abandon and remove its track; but, on the contrary, we find statutes which, by implication, at least, seem to indicate that no such power was ever contemplated. Article 6550, R. S. 1911, provides that "every railroad company organized in this state shall make an actual survey of its route or line for a distance of twenty-five miles on its projected route, and shall designate the depot grounds along said first twenty-five miles before the roadbed is begun, *and no railroad shall change its route or depot grounds after the same have been so designated.*" (Italics ours.) Again, article 6625, Id., which provides for the organization of new companies by the purchasers of the franchises of old ones, contains a proviso to the effect that by such purchase and organization no right shall be acquired in conflict with the present Constitution and laws in any respect, *nor shall the main track of any railroad once constructed and operated be abandoned or removed.*

The question here presented, so far as we are advised, has never been passed upon by the courts of this state; but ample authority is found in the decisions of other states of the Union to the effect that prior to the location, establishment, and operation of a railway company it would have the right, within its discretion, to change or alter its route; but, when its route has been selected and designated, and it has actually constructed its road, and begun operation thereover, such right no longer exists. And this doctrine seems to be well settled, and in conformity with an almost unbroken line of decisions in this country as well as in England. See 2 Elliott on Railways, § 930, wherein, among other things, it is said: "Once located it is said a railroad is permanently located for the whole term of its existence, subject only to the exception of a specially granted, express legislative enactment authorizing a change or relocation."

In the note to Lusby v. Kansas City, Memphis & Birmingham R. R. Co., 36 L. R. A. 510, it is said: "With the exception of the Mississippi & T. R. Co. v. Devaney, 42 Miss. 555, 2 Am. Rep. 608, which is now repudiated in Lusby v. K. C., M. & B. R. Co., the authorities are unanimous that, in the absence of express statutory authority, a railroad company cannot relocate its road after it has been once constructed. The Devaney Case held that railroad companies have the power to relocate the line of their roads after their completion under the first location, and to condemn for the purposes of such relocation private property, if there is manifest necessity for the change, and no detriment thereby accrues to the public. But the uniform current of case law is the other way. Under the English practice there is no power to relocate the route, since it is definitely fixed in the statute creating the company. See statement of the English practice in North Missouri R. Co. v. Lackland, 25 Mo. 515. In Lakeshore & M. S. Ry. Co. v. Baltimore & Ohio C. R. Co., 149 Ill. 272 [37 N. E. 91], it is said that it is well settled that, where the termini and general route of a railroad are prescribed by the charter of the company, leaving the determination of details to its discretion, the power of the company to fix the location of the road is exhausted after such discretion has been exercised, and thereafter the location cannot be changed without specific legislative authority." After the road has once been located and constructed, the company ceases to possess authority to further select a route, and it cannot therefore vary the route already selected. Brigham v. Agricultural Branch R. Co., 1 Allen (Mass.) 316. After the terminus of the road has been selected and used for 20 years, the company cannot change it. Atl. & P. R. Co. v. St. Louis, 3 Mo. App. 315. The maxim that, if a man once determines his election, it shall be determined forever is applicable to the location of a railroad, so that after such location the corporation cannot make a new location, or abandon the route for a more eligible one. Morris & E. R. Co. v. Central R. Co., 31 N. J. Law, 205. When a company created for the purpose of constructing a railway has located its line, it cannot change the location, and adopt a new route, unless the power to do so is expressly granted to it by the Legislature. Mason v. Brooklyn City & N. R. Co., 35 Barb. (N. Y.) 373; People v. N. Y. & H. R. Co., 45 Barb. (N. Y.) 73. To the same effect is Hudson & D. Canal Co. v. N. Y. & E. R. Co., 9 Paige (N. Y.) 323; Moorhead v. Little Miami R. Co., 17 Ohio, 340, and other cases cited in the note. See, also, 1 Lewis on Eminent Domain, § 402, p. 728; People v. Louisville R. Co., 120 Ill. 48, 10 N. E. 657; Brown v. Atl. & Birmingham Ry. Co., 126 Ga. 248, 55 S. E. 24; Atlantic & B. R. Co. v. Kirkland, 129 Ga. 552, 59 S. E. 220; Leverett v. Middle Georgia R. R. Co., 96 Ga. 392, 24 S. E. 154. In this last case the terminus was fixed by the charter. See, also, 33 Cyc. p. 134.

Appellant contends that, by the acceptance of the charter and the operation of the road thereunder, an implied contract arose

for its continuance during the life of the charter, and that, such being the case, its removal was unlawful in the absence of express legislative authority, citing Reagan v. Farmers' Loan & Trust Co., 154 U. S. 392, 14 Sup. Ct. 1052, 38 L. Ed. 1014, wherein it is said: "Still another matter is worthy of note in this direction. In the famous Dartmouth College Case, 4 Wheat. 518 [4 L. Ed. 629] it was held that the charter of a corporation is a contract protected by that clause of the national Constitution which prohibits a state from passing any law impairing the obligation of contracts. The International & Great Northwestern Railroad Company [meaning the I. & G. N. R. R. Co.] is a corporation created by the state of Texas; the charter which created it is a contract whose obligations neither party can repudiate without the consent of the other. All that is within the scope of this contract need not be determined. Obviously, one obligation assumed by the corporation was to construct and operate a railroad between the termini named." See, in this connection, 1 Elliott on Railways, § 43, where it seems that the charter, within itself, when accepted and acted under, becomes a contract between the state and the company.

Finding no statute granting to railway companies the right to abandon and remove any portion of their track after the same is located, and none being granted in its charter, and taking into consideration the fact that the Legislature has from time to time granted such right in special cases when applied to (as instanced by the permission granted to the Southern Kansas Railway Company by the Thirtieth Legislature to abandon a portion of its line running from Washburn to Panhandle—see Session Laws of 1907, p. 99—and other instances not necessary to enumerate), we hold that, in the absence of express legislative grant, no railway company is authorized to abandon or remove any part of its track, and that the abandonment and removal in the present case was therefore unlawful.

Appellant further contends that the court erred in refusing to grant it a mandamus or mandatory injunction, on the ground that the appellee had violated its charter and contractual duty owed to the state and the public thereunder, and refused to perform said duty, whereby appellant was entitled to the issuance of such writ, citing, in support of such contention, Rex v. Severn & Wye Ry. Co., 2 Barnwall & Alderson's Rep. 646; Railway Co. v. Davis, 2 Dev. & B. (19 N. C.) 469, cited in State v. Southern Pac. R. Co., 24 Tex. 124; People v. Albany & Vermont Ry. Co., 24 N. Y. 261, 82 Am. Dec. 300; Id., 19 How. Prac. (N. Y.) 523; Id., 37 Barb. (N. Y.) 216; Id., 24 N. Y. 261, 82 Am. Dec. 295; Attorney Gen. v. West Wisconsin Ry. Co., 36 Wis. 466; Id., 34 Wis. 204; People v. Troy & Boston Ry. Co., 37 How. Prac. (N. Y.) 427; 6 Barn. & Cress. 181; King v. Stacy, 1 Term, 1; Whitemarsh Tp. v. Philadelphia, G. & N. R. Co., 8 Watts & S. (Pa.) 365; Bates v. Conkling, 10 Wend. (N. Y.) 393.

[2] It is said that mandamus is the proper remedy to prevent a railroad company from abandoning a part of its road after completion. See 1 Elliott on Railways, § 638; Chicago Ry. Co. v. Crane, 113 U. S. 424, 5 Sup. Ct. 578, 28 L. Ed. 1064; Talcott v. Pine Grove R., 1 Flip. 145, Fed. Cas. No. 13,735; 2 Elliott on Railways, 1056; People v. Railway Co., 28 Hun (N. Y.) 543; Railway Co. v. Hall, 91 U. S. 343, 23 L. Ed. 428. See, also, in this connection, A. & A. on Corporations, § 707; 16 Eng. Law & Eq. 299; 18 Id. 222.

[3] We do not believe that the order of the Railroad Commission authorizing the removal and abandonment of said portion of the track justified the company in doing so, because the Railroad Commission, in our opinion, had no power to grant such removal. The Commission is a creature of the statute, based upon constitutional provision for the establishment of an agency in this state, with such powers as may be deemed adequate and advisable. Section 2, art. 10, Const. of Texas. Being a creature of statute, with such powers only as the Legislature deemed adequate and advisable, it could deraign no authority by implication or from the common law. See Railroad Commission v. G., H. & S. A. Ry. Co., 51 Tex. Civ. App. 447, 112 S. W. 353. An order of the Commission, to be valid, must be based upon some express provision or delegation of power made by statute. R. R. Com. v. G., H. & S. A. Ry., supra; I. & G. N. R. R. Co. v. R. R. Com., 99 Tex. 332, 89 S. W. 961. We think that, before the appellee could claim the protection of such order, it must be able to put its finger upon the statute conferring upon the Commission the authority to make the same, which has not been done. The Commission in revoking its order expressly states that it is done on the ground that it had no authority to make the order in the first instance. Besides, it seems to have been made under the representation by the company that there would be no objection thereto; but, on the contrary, it appears that a vigorous protest to the removal had subsequently been made.

[4] Although we think it becomes our duty to reverse the case, because we conclude that the company had no right to remove and abandon the track in the absence of express legislative authority to do so, still we are not disposed to grant the full relief prayed for by the state—that is, award both the issuance of the writ of mandamus or mandatory injunction and assess a penalty for the violation of the order of the Railroad Commission directing the replacement of the track by the company—because, even if the Commission had the authority to make such order, which we do not decide, still, since the company had removed the track by its sanction, it could not be held to have willfully done so, for it had reasonable grounds there-

from to believe that it was justified in so doing.

We therefore reverse and remand the case, with instructions to the trial court to award the writ of mandamus or mandatory injunction, requiring the company to replace said track, and operate its line thereover.

Reversed and remanded, with instructions.