ENID, O. & W. RY. CO. et al. v. STATE. *
(No. 5495.)

(Court of Civil Appeals of Texas. Austin. Oct. 27, 1915. On Motion for Rehearing, Dec. 17, 1915.)

1. RAILROADS ⬳57 — ABANDONMENT — COMMON LAW.

Rev. St. art. 6625, declaring that in case of the sale of a railroad new corporations may be formed to operate and maintain the railroad, and that no main track of any railroad once constructed and operated shall be abandoned or moved, is merely declarative of the common law.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. ⬳57.]

2. RAILROADS ⬳32 — OPERATION — MAIN TRACK—CONSTRUCTION.

Under Rev. St. art. 6633, declaring that if any railroad corporation shall not, within two years after its articles of association shall be filed and recorded, begin the construction of its road and construct and equip in good running order at least 10 miles of its proposed road, and if any railroad, after the first two years, shall fail to construct and equip in good running order at least 20 additional miles, until completion of its line, its powers, as far as relates to that portion of the unfinished road, shall cease and shall be incapable of resumption by any subsequent act of incorporation, is self-executing, and precludes renewal of construction after loss of charter rights by failure to complete.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 63–69; Dec. Dig. ⬳32.]

**3. RAILROADS ⟺57 — OPERATION —. "MAIN TRACK."**

Where 10 miles of a proposed railroad was constructed within the two years provided by Rev. St. art. 6633, but no more was constructed, such 10 miles constituted the "main track" of the railroad and could not, under section 6625, be removed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. ⟺57.

For other definitions, see Words and Phrases, Second Series, Main Track.]

**4. RAILROADS ⟺129—OPERATION—ENFORCEMENT OF OPERATION.**

Where a railroad became insolvent and was sold by a receiver under order of court, to persons who had no charter to operate it, and, operation being unprofitable, they cannot be required by the court to operate; for it would be impracticable to enforce such judgment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 392, 393, 399–403; Dec. Dig. ⟺129.]

**5. RAILROADS ⟺129 — OPERATION BY PURCHASER—AUTHORITY OF COURT.**

Where an insolvent railroad company was sold by a receiver under order of court, the operation being unprofitable, the court cannot require the purchasers to continue operation; for that would work a confiscation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 392, 393, 399–403; Dec. Dig. ⟺129.]

**6. EVIDENCE ⟺8—JUDICIAL NOTICE.**

The court will take judicial cognizance of the fact that rails and ties left on a railroad right of way will ultimately become worthless if they remain unused.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 7; Dec. Dig. ⟺8.]

**7. RAILROADS ⟺129 — ABANDONMENT — REMOVAL OF PROPERTY.**

Where a railroad company became insolvent, was placed in the hands of a receiver, and its property sold under order of court, operation being unprofitable, the purchasers who formed no corporation to carry on the business of the railroad, and who did not have any right to continue the construction, the railroad having forfeited its right to extend its line, cannot, on the theory that a railroad is a public highway which should not be abandoned, be restrained from removing the rails and ties for use elsewhere.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 392, 393, 399–403; Dec. Dig. ⟺129.]

**8. RAILROADS ⟺57 — OPERATION — DEDICATION.**

While a railroad upon construction is dedicated to public use, the operation having been abandoned, the physical properties as the rails and ties may be removed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. ⟺57.]

On Motion for Rehearing.

**9. RAILROADS ⟺57—INSOLVENCY—SALE.**

Where the property of a railroad company which had no rolling stock and the operation of which had been abandoned was sold, the right to dismantle the road existed independent of the judgment.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 124–126; Dec. Dig. ⟺57.]

**10. RAILROADS ⟺129—INSOLVENCY—SALE.**

Where the property of an insolvent railroad corporation is sold by a receiver under order of court, such sale does not work a forfeiture of the company's charter, but purchasers become, in effect, its stockholders, and are bound by the provisions of the charter and the common law applicable to the sold-out company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 392, 393, 399–403; Dec. Dig. ⟺129.]

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by the State of Texas against the Enid, Ochiltree & Western Railway Company and others. From a judgment for plaintiff, defendants appeal. Reversed and rendered.

This is a suit by the state of Texas to perpetually enjoin the appellants from taking up and removing the ties and rails on the Enid, Ochiltree & Western railroad, from Dalhart, in Hartley county, Tex., to Wilcoe in said county, a distance of about 13 miles. The case was tried before the court upon an agreed statement of facts, and judgment was rendered for the appellee. From said agreed statement, we find the following as the facts material to the decision of this case: The Enid, Ochiltree & Western Railway Company was incorporated November 2, 1908, under the laws of this state, to build a railroad from Ochiltree, in Ochiltree county, Tex., to Dalhart, in Dallam county, Tex., a distance of about 113 miles. Subsequently, by amendment to its charter, its eastern terminus was fixed at the eastern boundary of Lipscomb county, making the length of the proposed road about 165 miles. The company acquired, with the exception of 12 or 15 miles, the right of way from Ochiltree to Dalhart. It constructed on its right of way a first-class dirt roadbed from Dalhart to Dumas, in Moore county, Tex., a distance of about 34 miles, and within two years from the date of its charter, constructed and completed its track to Wilcoe, a distance of about 13 miles. Neither it nor its purchasers have ever constructed any additional road. It obtained grounds for terminal facilities and made physical connections at Dalhart with the Ft. Worth & Denver and the Chicago, Rock Island & Gulf Railway Companies, and erected depots at Dalhart and Wilcoe, the former at a cost of $198.87 and the latter at a cost of $204.72, and for about two months operated a mixed freight and passenger train once a day each way between said stations. On December 22, 1910, the road was placed in the hands of a receiver. On January 6, 1911, the receiver submitted to the court his sworn report (omitting formal parts) as follows:

"That about the 2d day of November, 1910, and before a receiver was appointed for said railroad company, it put in operation a train for freight and passengers from Dalhart to Wilcoe, Tex., a distance of about 13 miles, and since that time has been operating said train one way each day for the purpose of hauling freight and passengers, and that the expense of operating said train is not less than $1,500 per month, and perhaps $2,000 per month, and that the gross earnings resulting from the operation of said train during the months of November and December did not exceed $350 per month, owing to

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the fact that the crops have been moved and that there is but little freight being shipped in which would go over this road, and for several months to come the earning capacity of said road by the operation of its train will be practically nothing. That said railroad company is in imminent danger of insolvency, as was shown in petition of J. B. Cartwright against said railroad company in the cause wherein this petitioner was appointed receiver, and said road was, at the time the receiver was appointed, totally without funds, and is now without funds and without any means of procuring same, except by creating a debt against the corpus of the railroad property, which, if done, will operate only to the detriment of said railroad company and its creditors. That the station of Wilcoe, the point where said train is operated to out of Dalhart, is only a siding or switch. That there is no settlement there, and the territory between Dalhart and Wilcoe is also sparsely settled, and for said reasons the railroad company cannot hope to get sufficient business at any time in the future to pay the operating expenses of said train.

"Your petitioner would further show to the court that an arrangement can be made, and will be made, if the order is granted by said court, which will hereinafter be prayed for, by which any freight that may accumulate at Wilcoe, Tex., can be handled, put and delivered to connecting carriers, which will be done promptly on request of the shipper, at a cost not exceeding one-third of the amount of freight or revenue that will be received by the company as freight charges for transporting said freight, and by said arrangement the company will be able to earn and receive some net profit from the freight handled over its line.

"Your petitioner would further show to the court that there is practically no passenger traffic over said railroad line, and therefore all the practical results desired will be obtained with reference to handling of passenger and freight traffic by said railroad company by and through the plan hereinbefore suggested."

It was agreed that the matters set forth in said application are true. In compliance with said application and order, the operation of said road was discontinued about the date of said order, and on June 6, 1911, under order of the same court, the receiver sold the engine and coach owned by the company, and since said time the corporation has owned no operating equipment whatever. After the date of said order, January 6, 1911, no train has ever been run over said road. Shortly after the receiver was appointed the court directed a sale of the property belonging to said corporation, and the receiver made many efforts to sell same at a price approximating $60,000. Having failed to do this, the court, on March 22, 1912, ordered the receiver to sell all the property of said railroad, and fixed $31,000 as a minimum bid that would be accepted therefor. Thereafter, on June 1, 1912, in pursuance of said order, the individual defendants herein submitted their bid of $33,000, which, after consideration, was accepted by the receiver and approved by the court, and the property ordered to be conveyed to them. The purchasers at the receiver's sale, the appellants herein, are themselves unable to further extend said road, and are unable to obtain money for that purpose. They are threatening to take up and remove the ties and rails on the road be-

tween Dalhart and Wilcoe, their declared purpose being to use them in the construction of a road from Higgins, in Lipscomb county, to the town of Ochiltree, for the construction of which they have been promised financial assistance by citizens of Higgins, and they aver that by so doing they hope thereafter to be able, with the aid of bonuses, to construct the road from Ochiltree to Dalhart, as contemplated in the original charter of the Enid, Ochiltree & Western Railway Company. The appellants have not organized a railway company, and have no charter to build a railroad, and no charter has been granted to any one to build a railroad from Higgins to Ochiltree. There is no town or post office at Wilcoe, nor at any other point on the 13 miles of completed track. Wilcoe was designated as a station on the survey filed by the railway company.

H. J. Cureton, of Meridian, and Ramsey, Black & Ramsey, of Austin, for appellants. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State.

JENKINS, J. (after stating the facts as above). [1] Article 6625, R. S., in reference to "new corporations in case of sale," provides for the formation of new corporations "for the purpose of acquiring, owning, maintaining and operating 'sold-out'" railroads, from which article we make the following excerpt: "Nor shall the main track of any railroad once constructed and operated be abandoned or moved." This is but declarative of the common law. State v. Sugarland Railway Co., 163 S. W. 1047. As the sold-out company is not threatening to remove its ties and rails, and as the appellants have not organized a railway company to maintain or operate the road as constructed, the article above cited and the other articles cited in the Sugarland Case, are important only as showing the general policy of this state in reference to the permanent location of railroads.

[2, 3] We do not agree with either of appellants' contentions that the road as constructed from Dalhart to Wilcoe is not a part of a "main track" of a railroad, and that the proposed action of the appellants does not constitute an abandonment of such track. Article 6633, R. S., provides:

"If any railroad corporation organized under this title shall not, within two years after its articles of association shall be filed and recorded as provided in this title, begin the construction of its road, and construct, equip and put in good running order at least ten miles of its proposed road, and, if any such railroad corporation, after the first two years, shall fail to construct, equip and put in good running order at least twenty additional miles of its road each and every succeeding year until the entire completion of its line, such corporation shall, in either of such cases, forfeit its corporate existence, and its powers shall cease as far as relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation. * * * *"

This article is self-executing. S. S. & Mt. Ry. Co. v. A., T. & S. F. Ry. Co., 2 Tex. Civ. App. 650, 22 S. W. 107, 23 S. W. 1012. The Enid, Ochiltree & Western Railway Company constructed and operated more than 10 miles of its road, as required by this article of the statute, that is to say, prior to November 2, 1912, but more than a year having elapsed since that time, and it having failed to construct any of its road, in addition to the 13 miles from Dalhart to Wilcoe, it has forfeited all of its charter rights as to its additional road, and is forever barred from resuming the same, so that the road as constructed between said stations now constitutes, not merely a part of its main line, but its entire main line.

[4-7] That the appellants in good faith purpose to attempt, at some indefinite time in the future, to relay said track when they shall have completed the eastern end of the road from Ochiltree to Wilcoe, and that they may believe that by first constructing a road from Higgins to Ochiltree they may be enabled to finance the construction of the road from Ochiltree to Dalhart, does not militate against the proposition that removing the rails and ties from the roadbed between Dalhart and Wilcoe constitutes an abandonment of said road, if it has not already been abandoned by the facts hereinabove set out.

But the question still remains, Have the courts the power to enjoin the appellants from removing the rails and ties from the track which has been constructed? They are the property of appellants, and one may do as he pleases with his own property, so long as he does not interfere with the rights of others. The only others whose rights could in any manner be interfered with by the proposed action of appellants is that portion of the public who might be benefited by the operation of the road as constructed. The right of the state to control railway property arises from the fact that railroads are public highways, and therefore the public is interested in such roads being maintained and operated. But no one can be benefited by allowing rails and ties to remain upon a roadbed, if no trains are operated thereon.

Could the state compel appellants, or any one else, to operate the road from Dalhart to Wilcoe? We think not, for the reason that it would be impracticable to enforce a judgment of a court to that effect; and, if it could be enforced, it would amount to confiscation under the undisputed facts of this case. How could a court compel the operation of a railroad? If a railway company failed to operate its road, the state might forfeit its charter on account of such dereliction of its public duty. The Enid, Ochiltree & Western Railway Company possesses no charter privileges. They have been sold under an order of a court of competent jurisdiction. If a railway company fails to operate its road, the court may appoint a receiver to operate the same. The proper district court did appoint a receiver. But he could not be compelled to continue the operation of the road, for the reason that the company had no funds; the operation of the road would not pay operating expenses, and, of course, a receiver could not be compelled to operate a railroad with his private funds, if he was possessed of such funds. In order to operate a railroad it is necessary to keep the track in repair, to have rolling stock, to purchase fuel and to pay the crew's wages. The appellants have no rolling stock, and they could not pay the crew out of the earnings of the road. Suppose the court should order them to purchase rolling stock necessary for the operation of the road and they should refuse to do so, what could the court do about it? Forfeit their charter? They have none. Appoint a receiver to operate the road? The court tried that, and it proved a failure. Sell it? It is worthless, unless its material can be utilized as junk. The purchaser could not operate the road except at a loss, and of course would not do so. Put appellants in jail? Certainly not. If the court had the means of compelling appellants to take money out of their pockets and invest the same in operating a railroad which did not and never would pay operating expenses, as is admitted to be the case with the road in question, the exercise of such means would amount to confiscation, and would be violative of the Constitution of this state and of the United States.

In Jack v. Williams (C. C.) 113 Fed. 823, 15 miles of a projected railroad had been built, and its operation had proven unremunerative. By order of the court the constructive material of its roadbed had been sold and the purchasers had removed the same. It was sought to compel them to replace it. The circuit judge said:

"A railroad is in a sense a public concern. To its construction * * * the action of the sovereign is needed. * * * The consideration for these acts of the sovereign is the utility of the enterprise to the public. * * * However, no corporation or private person is obliged to continue the service without a reasonable remuneration. No one can be compelled to serve the public for nothing. Private property of no kind, including railroad property, can be used for public purposes without compensation. Smyth v. Ames, 169 U. S. 467, 18 Sup. Ct. 418, 42 L. Ed. 819; Road Co. v. Sandford, 164 U. S. 578, 17 Sup. Ct. 198, 41 L. Ed. 560; Chicago, M. & St. P. R. Co. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970; Railway Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858. All these cases determine that a railroad company, in the full enjoyment and use and capacity to use its franchises, cannot be compelled to exercise its franchises without reasonable remuneration. A fortiori a railroad corporation, or a person owning a railroad, cannot be compelled to operate that road, not only without remuneration, but at a loss. And this not by any means because such corporation or person is insolvent. If a citizen has the wealth of the Rothschilds, he cannot be compelled to use

a dollar of his wealth for public purposes without compensation."

The relief sought was denied, and the decision was affirmed by the Circuit Court of Appeals. See 145 Fed. 281, 76 C. C. A. 165.

The case of Trust Co. v. Railroad Co. (C. C.) 192 Fed. 728, arose upon an application to sell an insolvent New Hampshire railroad as a going concern if a purchaser could be found, and if not as junk, with the privilege on the part of the purchaser to dismantle the road. The statutes of New Hampshire, as do the statutes of Texas, declared all railroads to be public highways and forbade their discontinuance. The conclusion was reached that the court had the power, if necessary in order to realize anything from the property, to order a sale in the alternative; that is to say, if it had no value as a railroad, to sell its material as junk.

In State v. Railway Co., 53 Kan. 329, 36 Pac. 755, 24 L. R. A. 564, it was sought to compel a bankrupt railway company and the purchaser thereof to relay a portion of the track which had been taken up. The court said:

"The court will not make a useless or futile order. It will not do a vain thing. The order prayed for should only be issued in the interest of the public. If the track is replaced, there is no reasonable probability that the road will be or can be operated. * * * If the railway is not operated, the mere existence of a road, not in use, is not beneficial to any one."

The Attorney General seems to recognize the soundness of the proposition that the appellants cannot be compelled to operate the road in question, in that he does not controvert such proposition, but calls attention to the fact that this is not a case wherein the state is seeking to compel such operation, but is asking only that the ties and rails be not removed. If the state has no authority to compel such operation, it is because to do so would be to take private property for public use without compensation. There can be no difference in principle in compelling a party to expend money for the use of the public in the operation of a railroad, and in taking from him the value of his property invested in such enterprise. In the instant case we take judicial cognizance of the fact that the rails and ties will ultimately become worthless if they remain where they are. In compelling them to so remain the state is as effectually destroying them, and thereby depriving appellants of their property therein, as if it should burn the ties and sink the rails in mid-ocean, or convert them into money and deposit the same in the state treasury. And cui bono? Not the public, nor any portion thereof. A railroad which is not operated, which cannot now or ever be made to pay expenses, and therefore will never be operated, is not and can never be beneficial to the public.

In Sherwood v. Railway Co., 94 Va. 306, 26 S. E. 943, the court said:

"Where the line of railway, taken as a whole, cannot be profitably maintained; where its operation, when discreetly and economically managed, is attended with loss, it is difficult to perceive how a court can, by mandamus or otherwise, compel its operation to be continued. If the loss is the result of improvident and unthrifty management, the court may, at the suit of those interested, take charge of it for the benefit of all concerned, and run it through the instrumentality of a receiver, but if the traffic of a road is really insufficient to support a wise and economical administration of its affairs, there would seem to be no escape from its ultimate abandonment."

A railroad over which no trains are or will ever be run is, for all practical purposes, already abandoned, and no public interest can be subserved by compelling its ties and rails to remain until the one rots and the other is destroyed by rust. The road in question was, for all practical purposes, abandoned by order of the district court when it authorized the receiver to cease its operation and to sell all of its rolling stock, which was done prior to its purchase by appellants.

[8] The appellee insists that appellants should not be heard to say that to compel the rails and ties to remain is to take their property without compensation, for the reason that by the construction and operation of the road it had been dedicated to public use prior to their purchase of the same, and that they bought with knowledge that the law forbade the abandonment of the road. But we hold that such is not the law and has never been, but that a railroad track may be abandoned and its construction material removed when it is conclusively shown that the public no longer has any interest in such material's remaining on the roadbed.

The case of the State v. Sugarland Railway Co., 163 S. W. 1047, is not authority for the proposition here contended for by the state, for the reason in that case the railroad was a going concern, and was not proposed to be abandoned, except as to a few miles at one of its termini, and it was not alleged that the operation of the road as a whole was not remunerative.

For the reasons stated, the judgment of the trial court is reversed, and judgment is here rendered for the appellants.

Reversed and rendered.

### On Motion for Rehearing.

The argument of the Attorney General on motion for a rehearing indicates some misunderstanding on his part as to the grounds of our decision herein, and for fear that we have not made our position quite plain, we will here attempt to do so.

[9] 1. We do not hold that the judgment of the district court of Hartley county, under which the road was sold, authorized the purchasers to dismantle the road. The right exists independent of that judgment.

[10] 2. We recognize the fact that, though the purchasers have not organized a corporation to take over the sold-out road, for-

which reason the provisions of article 6625, R. S., do not apply to them, nevertheless, the sale of the road did not work a forfeiture of its charter, but the purchasers became, in effect, its stockholders, and were bound by all of the provisions of the statute and of the common law applicable to the sold-out company. Railway Co. v. Morris, 67 Tex. 700, 4 S. W. 156; Railway Co. v. Newell, 73 Tex. 338, 11 S. W. 342, 15 Am. St. Rep. 788; Railway Co. v. Harle, 101 Tex. 181, 105 S. W. 1107; Railway Co. v. Anderson County, 150 S. W. 250; Id., 156 S. W. 503; Thayer v. Wathen, 17 Tex. Civ. App. 392, 44 S. W. 906; Williams v. Railway Co., 22 Tex. Civ. App. 281, 55 S. W. 130. Therefore, the question is: Could the railway company, under the facts of this case, be enjoined from removing the ties and rails, if it was threatening to do so, as are the individual defendants herein? It is a general rule of the common law that when a railroad has been constructed and operated, its location shall not be changed without legislative consent, and such is the general policy of this state as indicated by our statutes. Articles 6550, 6625, R. S. This rule is founded on reason and justice. The reason of the rule is that a railway is a public highway, and property is acquired with reference to its location, and with the view of its permanent operation. To allow railway companies to remove their tracks would generally destroy the rights of the public, acquired with reference to such public highway. If railway companies could change their location or discontinue operations at their will, a threat to do so would be a potent means of levying blackmail on that portion of the public whose interest would be affected by such removal or abandonment. The consideration which a railway company receives for the enforcement of such rule is its charter granted by the state, and the privileges conferred thereby. A railway company, while a going concern, may be enjoined from violating its implied contract not to move its track. For failure to operate its road, its charter may be forfeited. But, as we have stated in our previous opinion herein, the state has no power to compel any one to operate a railroad, and when the owners have permanently ceased to do so, and thereby abandoned all of the privileges granted them by the charter, it has ceased to be a railroad in any proper sense.

There is another well-established rule of the common law, and that is, the owner of property may use it as he pleases, so long as he does not infringe upon the rights of others. This rule is not violated by forbidding a railway company that is a going concern to move its track, for in so doing it violates the property rights of that portion of the public contiguous thereto. When the reason of a rule ceases, the rule itself ceases. There can be no violation of public rights where the public has no rights. The public can have no beneficial interest in maintaining the ties and rails on a roadbed, if no trains are ever to be operated thereon, and can suffer no wrong by their removal. It cannot be anticipated that trains will ever be operated on a road which will never pay expenses. The state, by its Attorney General, has signed an agreed statement of facts wherein it is stated that the road here under consideration can never be made to pay operating expenses. It is suggested that it might do so if extended, as called for in its charter. But the railway company has forever forfeited its right to continue the construction of the road, and there is no way of compelling the individual owners, or any one else, to do so. We are not called upon to deal with the road as it may be extended in the future, but as it now exists, this being the road that it is proposed to dismantle. Consideration as to this road's ever being able to pay operating expenses is precluded by the agreement of the parties hereto that it can never be made to do so, which agreement will be taken as a fact by this court.

It is suggested that this case is differentiated from Jack v. Williams (C. C.) 113 Fed. 823, in that, in that case no part of the expense of constructing the road had been paid for by subscriptions of private parties, whereas, in the instant case the road was built principally, if not entirely, by such subscription. The subscribers to that fund are not complaining—they are not parties to this suit. The only party plaintiff in this suit is the state, in behalf of the public, represented herein by the Attorney General.

The Attorney General denies the applicability of Trust Co. v. Railway Co. (C. C.) 192 Fed. 728, to this case, inasmuch as the decree in that case was in the alternative. The fundamental proposition there decided was that, under proper circumstances, the court may order the sale of the constructive material as junk, in which case, of course, the purchasers would have the right to remove the same. If a court in a given case could rightfully make such order, it would be because the public had no interest in having such material remain in place. If such be the fact, the right of removal would not be created by the judgment of the court permitting the same, but such judgment would be entered because such right already existed, just as the judgment of a court quieting title or to recover a debt does not create such title or debt, but only evidences its previous existence.

The facts being that the Enid, Ochiltree & Western Railway Company has no rolling stock and is not able to purchase any; that it has ceased operations for several years, and can never resume such operations, except at a loss, as is admitted by the Attorney General, having thus in fact been permanently abandoned—said railway company would have the right to remove the rails and ties; and, as the purchasers have succeeded

to all of the rights of the company, they likewise have such right of removal.

Such being our views of the law, we overrule appellee's motion for a rehearing.

Overruled.