STATE OF TEXAS V. ENID, OCHILTREE & WESTERN RAILWAY
COMPANY ET AL.

No. 2833.   Decided February 7, 1917.

**1.—Railway—Charter—Contract.**

The charter of a railway company, constituting a contract with the State, is granted on an implied undertaking by the company created that it construct, maintain and operate a railway between the limits specified, and under an ex-press statutory requirement constituting a part of its contract (Rev. Stats., art. 6625) that it will not abandon or remove any part of the main line once constructed.   (P. 244.)

**2.—Same—Sold Out Road—Purchasers—Obligation.**

The purchasers of a railway at receiver's sale take the property subject to the obligations imposed on the original company by which it was forbidden to abandon or dismantle any portion of its main line once constructed; and such purchasers and the company (no reincorporation being had) may be enjoined from tearing up such track for the purpose of using the materials in construc-tion elsewhere.   (Pp. 244, 245.)

**3.—Same—Operation at Loss.**

The fact that a railway company has become insolvent and its property and franchises sold and that the part of its track sought to be torn up and abandoned by the purchasers at receiver's sale could not be operated save at a continued loss, and that the property would be valueless to them in such con-dition, will not render the prevention of its removal a deprivation of property without due process of law; nor will the track in question cease to be a part

of the "main line" of the railway, within the meaning of the statute, because of such conditions.    (P. 245.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State sued the railway company and others, the purchasers of its property and franchises at receiver's sale, and obtained injunction restraining the defendants from tearing up and abandoning a part of the railway.    The judgment was reversed and rendered for defendants on their appeal, and the State obtained writ of error.

*B. F. Looney,* Attorney General, and *Luther Nickels,* Assistant, for plaintiff in error.—The court erred in holding that "as the sold-out company is not threatening to remove its ties and rails, and as the appellants have not organized a railway company to maintain or operate the road as constructed," article 6625, Revised Statutes, 1911, and the other statutes mentioned, do not apply; it being the law that the Enid, Ochiltree & Western Railway Company,—the corporation,—together with its franchises, passed to the purchasers, together with the physical properties as an entirety, the purchasers taking the position of stockholders, and all the restrictions and obligations placed upon the corporation and its franchises and properties by the Constitution, statutes and common law having been transferred with said franchises and properties, and by reason thereof the purchasers have no lawful right to dismantle and destroy said railroad.    Arts. 6624, 6625, 6550 and 6532, Rev. Stats., 1911; G., C. & S. F. Ry. Co. v. Morris, 67 Texas, 700; G., C. & S. F. Ry. Co. v. Newell, 73 Texas, 338; Texas Southern Ry. Co. v. Harle, 101 Texas, 181; Anderson County v. I. & G. N. Ry. Co., 150 S. W., 250, 156 S. W., 503; Thayer v. Wathen, 17 Texas Civ. App., 392; Williams v. Texas Midland Ry. Co., 22 Texas Civ. App., 281; Galveston & W. Ry. Co. v. City of Galveston, 37 S. W., 27; State v. Sugarland Ry. Co., 163 S. W., 1047.

The court erred in holding that the "public interest" in this railroad had ceased and that, therefore, the appellants could dismantle the road. Sec. 17, art. 1, Constitution; sec. 2, art. 10, Constitution; arts. 6624 and 6625, Rev. Stats., 1911.

The State having the reserved power to prescribe what may be held as property and the tenures by which it may be held, and to regulate the manner and conditions upon which property may be acquired and enjoyed, and the manner of its descent, distribution or alienation, and having provided, in the exercise of this power, that the original public obligations inhering in or attaching to railroad property should be transferred with the property itself, and the appellants having purchased with full knowledge and notice of the pre-existing law which forbade the abandonment of railroads, can not be denied due process by enforcing,—as the judgment of the District Court herein does,— said public obligations.    As to the right of the State to impose conditions or transfer.    Wilcox v. Jackson, 13 Peters, 498; Langdon v. Sher-

wood, 124 U. S., 74. As to the transfer of the obligation, see authorities first above cited.

The court erred in holding that the appellants can lawfully dismantle this railroad, because the law and public policy of the State is that a railroad once constructed and operated is a public highway which can not be abandoned without express legislative authority, and no such authority has been given in this case. State v. Sugarland Ry. Co., 163 S. W., 1047.

The judgment is erroneous because the order of sale under which appellants purchased only authorized the sale of the franchises and physical properties as an entirety, and does not authorize the purchasers to dismantle the road. Texas Southern Ry. Co. v. Harle, 101 Texas, 181.

The judgment is erroneous because if the order of sale under which appellants purchased can be construed to authorize the dismantling of the railroad, to that extent it is void because the State or the public were not parties to said suit, and because such order did not provide for the protection of the public interest. Trust Co. v. Railway Co., 192 Fed., 728.

*R. J. Cureton* and *Ramsey, Black & Ramsey,* for defendants in error.— Where it appears, as here, that the operation of a train over any given line of railway has been, is, and always will be a financial impossibility, and where it is shown that the public has no interest in the property and the property can not under any circumstances be subjected to a public use, the statute forbidding the removal or abandonment of the main track of a railroad does not apply, the track under such circumstances not being the main track of a railroad once constructed and operated within the meaning of the statute. Rev. Stats., art. 6625.

In order that it can be said that railroad property is affected by a public use so that it is subject to the extensive regulatory power of the State over such property, it must appear that the operation of the property in the interest of the public is, at least, a financial possibility. The authority of the State to prohibit the removal of trackage material laid on a railroad right-of-way is not unlimited. Upon the contrary, where it appears that the road can not under any circumstances be operated, then the full right of private ownership in the property is restored, and the owner should be permitted to remove the trackage material, and any statute prohibiting such removal amounts to a deprivation of property without due process of law and to a denial of the equal protection of the laws. Jack v. Williams, 145 Fed., 281; S. C., 113 Fed., 823 (discussing at great length the right to remove trackage material where operation is impracticable); New York Trust Co. v. Railroad Co., 192 Fed., 728 (involving the same question); State of Kansas v. Railway Co., 24 L. R. A., 564; Sherwood v. Atlantic Railway Co., 94 Va., 306; Commonwealth v. Fitchburg Railway Co., 12 Gray, 180; New York v. Railway Co., 103 N. Y., 95; Railway Co. v.

People, 120 Ill., 200; Cole v. Railway Co., 10 Ohio St., 372; Wyman on Public Service Corporations, sec. 296; Railway Co. v. Dustin, 142 U. S., 492.

Whilst serving the public no corporation or private person is obliged to continue service without a reasonable remuneration. No one can be compelled to serve the public for nothing. Private property of no kind, including railroad property, can be used for public purposes without compensation. Smyth v. Ames, 169 U. S., 467, 18 Sup. Ct., 418, 42 L. Ed., 819; Road Co. v. Sanford, 164 U. S., 578, 16 Sup. Ct., 198, 41 L. Ed., 560; Chicago, M. & St. P. R. R. Co. v. Minnesota, 134 U. S., 418, 10 Sup. Ct., 462, 33 L. Ed., 970; Railway Co. v. Smith, 173 U. S., 684, 19 Sup. Ct., 565, 43 L. Ed., 858. All these cases determine that a railroad company, in the full enjoyment and use and capacity to use its franchises, can not be compelled to exercise its franchises without reasonable remuneration. A fortiori, a railroad corporation, or a person owning a railroad, can not be compelled to operate that road, not only without remuneration but at a loss. And this not by any means because such corporation or person is insolvent. If a citizen has the wealth of the Rothschilds he can not be compelled to use a dollar of his wealth for public purposes without compensation.

It appearing from the statement of facts that it is the intention of the defendants to remove the trackage material from the western end of the proposed line of railway with the purpose and intent of relaying the same at the other end of said proposed line, this does not constitute an abandonment or removal of a track or railroad within the meaning of article 6625, the proposed action being merely an act of business discretion and management for carrying out in the most feasible and practicable way the work of constructing the entire line of railway. Attorney General v. Eastern Railroad, 107 Mass., 45; Railway Co. v. Callahan, 136 S. W., 1018; State v. Railway Co., 9 So., 469.

Mr. Justice YANTIS delivered the opinion of the court.

The suit was by the State of Texas against the defendants in error, and its purpose was to perpetually enjoin the latter from taking up and removing the rails and ties on the Enid, Ochiltree & Western Railway from Dalhart to Wilcoe, a distance of thirteen miles. Said railway company had been granted a charter by the State of Texas for the purpose of constructing, maintaining and operating a railway from Dalhart to Ochiltree, a distance of about 165 miles. All of the right-of-way, with the exception of a very few miles, had been secured, and the embankment for the roadbed had been constructed from Dalhart to Dumas, in Moore County, a distance of about thirty-four miles. It had constructed and completed its track from Dalhart to Wilcoe by funds raised from stock subscriptions, amounting to about $220,000 paid in. The whole of the right-of-way of this line from Ochiltree to Dalhart was acquired, and the corporation had constructed on its right-of-way a first class dirt roadbed, ready for the laying of ties and

rails from Dalhart to Dumas, and had graded the place for terminal facilities within the town of Dalhart; had acquired twenty-six acres of ground in the eastern suburbs of the town of Dalhart for switch and terminal grounds, and had acquired its right-of-way for physical connections at Dalhart with the lines of the Fort Worth & Denver City Railway Company and the Chicago, Rock Island & Gulf Railway Company, and it had constructed temporary depots at Dalhart and at Wilcoe, at a cost of approximately $400. It had acquired rolling stock consisting of one steam locomotive, a combination passenger and baggage coach and, five flat cars, passenger and freight rates and tariffs applicable were prepared and filed with and approved by the Railroad Commission of Texas and the Interstate Commerce Commission. Thereafter, early in November, 1910, said railway company put in operation its trains for the purpose of hauling freight and passengers from Dalhart to Wilcoe, running said trains daily from Dalhart to Wilcoe, and from Wilcoe back to Dalhart, on a regularly promulgated and advertised schedule, and continued to so operate said trains daily both ways for about two months. During said period said railway company sold tickets, made shipping contracts, issued bills of lading, issued and exchanged annual transportation with other connecting lines of railway, and hauled both freight and passengers for hire over its said line of railroad. During said period said company also entered into and maintained joint traffic rates, and similar arrangements with both the Fort Worth & Denver City Railway Company and the Chicago, Rock Island & Gulf Railway Company.

The facts show that said railway company, because of lack of funds, was unable to build any further, and on the application of J. B. Cartwright, and others, was placed in the hands of a receiver; that soon thereafter the operation of trains over said company's road was discontinued by order of the District Court, it having been made to appear to said court that the trains were operated at a loss to the company. It is shown that the expense of operating the train per month was about fifteen hundred or two thousand dollars, and that the gross earnings did not exceed three hundred and fifty dollars per month. It was further shown by the agreed statement of facts, that the station of Wilcoe is in a thinly settled country, and that the railway company could not hope to get sufficient business at any time in the future to pay the operating expenses of said train.

Shortly after the appointment of a receiver, the court directed a sale of the property belonging to the corporation, and it was purchased for the sum of thirty-three thousand dollars by the individual defendants in error herein, which was approved by the court, and the property ordered to be conveyed to them. The purchasers at the receiver's sale have been unable to secure the funds with which to extend said road, and are threatening to dismantle the same by taking up and moving the rails and ties on the road between Dalhart and Wilcoe, declaring their purpose to be to use the material in the construction of a road

from Higgins, in Lipscomb County, to the town of Ochiltree. They have not organized a railway company, and have not received a charter to build a railroad from Higgins to Ochiltree.

The suit was tried before the court without a jury in the District Court of Travis County, and resulted in a judgment in favor of the State, perpetually enjoining the defendants in error from dismantling said railroad. On appeal to the Court of Civil Appeals for the Third District the judgment was reversed and rendered. 181 S. W., 498. On application therefor by the State a writ of error was by this court granted.

The purposes and objects of said railway corporation, as expressed in the articles of incorporation, were to "permit, construct, maintain and operate, by steam or other mechanical power" a line of railroad between the town of Ochiltree and the town of Dalhart. The charter was granted by the State to the corporation, and accepted by it, for such purposes. The charter, when so issued and accepted, constituted a contract between the State and the railway company, and like other contracts its provisions and covenants are binding upon each party thereto; likewise they are binding upon the purchasers at receiver's sale, the defendants in error herein. Granting the charter by the State conferred a valuable right upon the railway company, but such right was not granted as a favor, but upon condition that the company would pay a valuable consideration to the State of Texas for the right granted, to construct, maintain and operate a railway between the towns of Ochiltree and Dalhart. The permission to so construct the road, and enter the railway business, was given by the State of Texas, and the consideration paid therefor was, by promise made to the State by the railway company, to construct, maintain and operate the railroad. By the terms of the contract the State procured for its citizens the benefits to be derived by the public from the use and operation of the railroad. The courts can not absolve the defendants in error from this duty. The courts enforce contracts, but can not nullify them. Upon the contrary, they should lend their aid in the enforcement of their provisions. Only by consent of the parties could the contract be modified so as to relieve the defendants in error from their obligation to maintain and operate the road, and not to move the track. The Legislature might have power to consent in behalf of the State to such alteration of the contract, but this court can not exercise such authority. It may be, as ably contended by the defendants in error, that the courts can not compel the operation of a railroad when it is financially unable to operate it. If so, the courts might refuse to require the operation of the road, which question we need not decide, but it would not be on the ground that the defendants in error have a right to refuse to discharge the duty resting upon them to faithfully comply with their contract to operate the road, but would be because the courts are impotent to enforce the contract on account of the insolvency of the corporation. The purchasers took it charged with the duty not to move

the main track. In the present case they assert the right to move the track. When the old company accepted the charter they impliedly consented to be bound by the provision of law to the effect that they would not move it. When the plaintiffs in error purchased the road and its franchises they became likewise obligated. We think they are bound by contract and by statute law not to move any portion of the main track, and that since they are attempting to do so they should be enjoined to desist therefrom. By the terms of article 6625, Vernon's Sayles' Civil Statutes, it is provided, in substance, that the "main track" of any railroad once constructed and operated shall not be "abandoned or moved." We think the defendants in error should not be permitted to take up the rails and ties in violation of said statute.

It is contended that to prohibit the defendants in error from moving their track, since they are unable to operate the road, would be to deprive them of property without due process of law. We think this contention is without merit. When the charter was granted and accepted the law provided that they should not move any portion of the main track once constructed. The railway company and its owners accepted the charter subject to that law, and impliedly consented to obey it. They must be held to have so contracted when the charter was issued and accepted. Their successors, the defendants in error, are in the same attitude, not being permitted by statute to purchase the property without also accepting the franchise of the sold-out company, with its attendant obligations. Texas Southern Ry. Co. v. Harle, 101 Texas, 182, 105 S. W., 1107; Gulf, Colorado & Santa Fe Ry. Co. v. Morris, 67 Texas, 700, 4 S. W., 156; Gulf, Colorado & Santa Fe Ry. Co. v. Newell, 73 Texas, 338-9, 11 S. W., 342; State v. Sugarland Ry. Co., 163 S. W., 1047, and International & G. N. Ry. Co. v. Anderson County, 106 Texas, 60, 156 S. W., 499. In this view we think it could not be successfully contended that the State is depriving the defendants in error of the use of their property without due process of law, in refusing to allow the main track to be dismantled. We overrule this contention, as we do the other contentions so ably argued by the defendants in error, under several assignments and propositions, to the effect that since the operation of the railroad will always be financially impossible, the track should not be held to be the "main track" of a railroad once constructed. The main track of a railroad once constructed, as this one was, would not lose its entity as such main track, because of insolvency.

We are of opinion that to remove the track to other counties for the purpose of use in the construction of another railroad, or to be used at the east end of the same proposed line, would be a removal of the main track, within the meaning of the statute which interdicts the removal.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is in all things affirmed.

*Reversed and judgment of District Court affirmed.*